**Surinder SINGH, Petitioner,**

v.

**BOARD OF IMMIGRATION APPEALS, Respondent.**

**Docket No. 03–4704.**

United States Court of Appeals, Second Circuit.

Submitted: Jan. 30, 2006.

Decided: Feb. 14, 2006.

Surinder Singh, East Elmhurst, NY, pro se.

Madelyn Johnson, Assistant United States Attorney (Kenneth L. Wainstein, United States Attorney for the District of

Columbia, Oliver W. McDaniel, Assistant United States Attorney, on the brief), United States Attorney's Office for the District of Columbia, Washington, DC, for Respondent.

Before: WINTER, CABRANES and B.D. PARKER, Circuit Judges.

PER CURIAM.

Surinder Singh, a citizen and national of India, petitions for review of a March 21, 2003 order of the Board of Immigration Appeals ("BIA") affirming a March 30, 2001 order of an immigration judge ("IJ") rejecting Singh's applications for asylum, 8 U.S.C. § 1158(b), and withholding of removal, 8 U.S.C. § 1231(b)(3). Singh entered the United States without inspection in August 1996, and removal proceedings were commenced against him in November 1997. Conceding removability, Singh sought asylum, withholding of removal and, in the alternative, voluntary departure. Singh alleged that he was twice detained by Indian authorities because he is an adherent of the Sikh religion and because he campaigned on behalf of the Sikh separatist political party Akali Dal Mann ("ADM"); during the second of those two periods of detention, he was allegedly beaten. Singh claimed that after the police came to his home and sought to detain him again—unsuccessfully because he was not home at the time—he left and traveled to the United States. According to Singh, following his departure, unwitting Indian authorities continued to visit his family's home in attempts to detain him.

After holding a hearing on the merits of Singh's applications on March 30, 2001, the IJ made an adverse credibility finding against Singh, denied Singh's applications for asylum and withholding of removal and granted Singh's application for voluntary departure. On appeal, the BIA summarily affirmed the IJ's order.

■■■ "Where, as here, the BIA has affirmed the IJ's decision without an opinion, we review the IJ's decision directly under a standard of 'substantial evidence.'" *Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 150 (2d Cir.2006); *see also* 8 U.S.C. § 1252(b)(4)(B) (providing that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary"). We engage in an "'exceedingly narrow'" review, *Melgar de Torres v. Reno*, 191 F.3d 307, 313 (2d Cir. 1999) (quoting *Carranza–Hernandez v. INS*, 12 F.3d 4, 7 (2d Cir.1993)), that involves "look[ing] to see if the IJ has provided 'specific, cogent' reasons for the adverse credibility finding and whether those reasons bear a 'legitimate nexus' to the finding." *Zhou Yun Zhang v. INS*, 386 F.3d 66, 74 (2d Cir.2004) (quoting *Secaida–Rosales v. INS*, 331 F.3d 297, 307 (2d Cir.2003)). Our "review is designed to ensure merely that 'credibility findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice.'" *Xiao Ji Chen*, 434 F.3d at 157 (quoting *Zhou Yun Zhang*, 386 F.3d at 74).

■■■ Although our review of an IJ's denial of asylum and withholding of removal on credibility grounds is "highly deferential," *Zhou Yi Ni v. U.S. Dep't of Justice*, 424 F.3d 172, 174 (2d Cir.2005); *Xu Duan Dong v. Ashcroft*, 406 F.3d 110, 111 (2d Cir.2005); *Jin Hui Gao v. U.S. Att'y Gen.*, 400 F.3d 963, 964 (2d Cir.2005), "an IJ's credibility determination will not satisfy the substantial evidence standard when it is based entirely on flawed reasoning, bald speculation, or conjecture." *Xiao Ji Chen*, 434 F.3d at 158 (citing *Secaida–Rosales*, 331 F.3d at 307, 312). When an IJ's decision contains errors, however, we

may nevertheless deem remand futile and deny the petition for review if "(1) substantial evidence in the record relied on by the IJ, considered in the aggregate, supports the IJ's finding that petitioner lacked credibility, and (2) disregarding those aspects of the IJ's reasoning that are tainted by error, we can state with confidence that the IJ would adhere to his decision were the petition remanded." *Id.* at 161; *see also Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 395 (2d Cir.2005) (stating that a reviewing court may "affirm, despite IJ errors, when we can confidently predict that the IJ would necessarily reach the same result absent errors").

█ Here, the IJ supported his adverse credibility determination against Singh with the following evidence in the record: (1) Singh's different answers as to why he had not been baptized in the Sikh faith and his failure to explain his first answer, which was premised on a relationship between the length of one's hair and readiness for baptism; (2) the inconsistency between Singh's testimony and the written submission of an ADM official, who was, according to Singh, personally aware of Singh's difficulties with the police, and who claimed, contrary to Singh's testimony, that Singh was beaten during his first period of detention; (3) the purported inconsistency in Singh's testimony relating to who secured his release from his second period of detention and who was present at the time of that release; (4) the failure of a village leader, or *saparnach*, who was allegedly present at the time of Singh's release from his second period of detention to include the fact of his own presence in his written submission to the IJ; (5) the nearly identical language in the written affidavits allegedly provided by different people in India in support of Singh's applications; (6) the

fact that Singh failed to submit any records concerning the medical treatment he received during his alleged month-long stay at the Kartiq Hospital following his second period of detention, even though Singh's son was able to obtain a letter from the Kartiq Hospital that Singh submitted in support of his applications; (7) Singh's "exceedingly vague, undetailed, and unreliable testimony," Decision of the IJ, Mar. 30, 2001 ("IJ Decision"), at 13, relating to Indian authorities' continued visits to the home of his family after he left for the United States; and (8) the failure of Singh's father to mention those continued visits in his affidavit.

Considering the record in its entirety, we conclude that the IJ's decision was founded on substantial evidence. The IJ's adverse credibility determination was well-supported by the inconsistency between Singh's testimony and the affidavit of the ADM party official, the failure of the *saparnach* to include his presence at the time of Singh's release in his affidavit, the nearly identical language of the affidavits Singh submitted, Singh's failure to produce medical records even though his son was able to obtain a letter from Kartiq Hospital and Singh's vague testimony concerning continued visits by the Indian police to the home of Singh's family and the absence of any mention of those visits in the affidavit of Singh's father.

█ We find error, however, in the IJ's reasoning concerning two specific bases for his adverse credibility determination. First, although Singh's answers concerning why he had yet to be baptized in the Sikh faith were incomplete and shifting, they were insufficient to support the IJ's speculative determination that Singh "is not, in fact, a Sikh." IJ Decision at 6; *see Zhou Yun Zhang*, 386 F.3d at 74 (explaining that our limited review includes ensuring that "credibility findings are based upon

neither a misstatement of the facts in the record nor bald speculation or caprice"). Second, the IJ misstated the evidence in the record when relying on Singh's purportedly "inconsistent" testimony, IJ Decision at 11, concerning his release from his second period of detention. *See Zhou Yun Zhang,* 386 F.3d at 74.

In rendering his adverse credibility determination, the IJ relied on inconsistencies supposedly demonstrated by the following colloquy concerning the fact that Singh had not been baptized:

Q. And can you tell me why it is that you were never baptized as a Sikh?

A. I would—I will do that. So far I didn't do that because I couldn't grow my hair properly so far.

Q. And when you refer to your hair are you referring to the hair on your head or to your beard?

A. I—I don't think that I have enough hair on my head and that I don't think that the beard is complete beard so far.

Q. You do appear rather fully bearded to me.

A. I will be baptized, but so far I did not.

Q. Well, sir, you're 53 years old. Isn't that right?

A. Yes. I am 53 years old, yes.

Q. Are you telling me that you have never had enough head hair to qualify for baptism?

A. I didn't do that, but this is the proper time and I will do that.

Q. I don't know if I understand what you're telling me. Why would the length of your hair prevent you from being baptized?

A. I did not prepare myself mentally for baptism.

Tr. of Hr'g, Mar. 30, 2001, at 56. The IJ characterized Singh's testimony regarding baptism as "inconsistent in nature" and considered it "[e]ven more damning" that "when confronted with his initial explanation as to why the length of his hair should relate to his having been baptized, [Singh] immediately changed his answer to indicate an alternative reason." IJ Decision at 6. On the basis of the exchange relating to baptism, the IJ reasoned that "[Singh's] elusiveness . . . [is] evidence that it is likely that [Singh] is not, in fact, a Sikh." *Id.* Although Singh's answers relating to his failure to be baptized in the Sikh faith were incomplete and may well have undermined Singh's credibility, they were insufficient to support the IJ's speculative conclusion that Singh is likely not a Sikh.

Singh testified that his father arranged for the payment of a bribe to secure Singh's release from his second period of detention. Upon being reminded that affidavits submitted in support of his application for asylum stated that he had been released after the intervention of "respectables," Singh explained that the village leader, or *saparnach,* had been there at the time of his release and that such intervention was customary. The two statements characterized by the IJ as "inconsistent," IJ Decision at 11, are not in fact inconsistent. Singh seems to have testified that his father arranged for the payment of a bribe *and* that the *saparnach* intervened.

■ Notwithstanding our recognition of these errors in the IJ's decision, there exist ample, error-free grounds that provide substantial evidence to support the IJ's adverse credibility determination, and, despite the IJ's errors, "we can state with confidence that the IJ would adhere to his decision were the petition remanded." *Xiao Ji Chen,* 434 F.3d at 161. In addition to the two erroneous reasons, the IJ relied on six additional grounds that are sup-

ported by the record and that enable us to " 'confidently predict' " that the IJ would render the same decision in the absence of the errors. *Id.* at 162 (quoting *Cao He Lin,* 428 F.3d at 395); *see also Cao He Lin,* 428 F.3d at 401 ("[W]e are not required to remand where there is no realistic possibility that, absent the errors, the IJ or BIA would have reached a different conclusion."). We therefore conclude that remand would be futile.

We have considered all of petitioner's arguments and find them to be without merit. Accordingly, we DENY the petition for review.