Zulber KADRIOVSKI, Petitioner,

v.

Alberto R. GONZALES, Attorney General, Respondent.

No. 05–4048–ag.

United States Court of Appeals, Second Circuit.

Sept. 4, 2007.

**738**

Matthew L. Guadagno, Kerry W. Bretz, Jules E. Coven, Bretz & Coven, LLP, New York, NY, for Petitioner.

Kevin J. O'Connor, United States Attorney, District of Connecticut; Christine Sciarrino, Sandra S. Glover, Assistant United States Attorneys, New Haven, CT, for Respondent.

PRESENT: Hon. ROBERT D. SACK, Hon. B.D. PARKER, and Hon. RICHARD C. WESLEY, Circuit Judges.

### SUMMARY ORDER

Zulber Kadriovski, a native of the Former Republic of Yugoslavia and a citizen of Macedonia, seeks review of a June 24, 2005 order of the BIA denying his motion to terminate for "repapering" and affirming the September 24, 2003 decision of Immigration Judge ("IJ") Elizabeth Lamb denying his application for asylum and withholding of removal. *In re Zulber Kadriovski*, No. A 29 842 095 (B.I.A. June 24, 2005), *aff'g* No. A 29 842 095 (Immig. Ct. N.Y. City Sept. 24, 2003). We assume the parties' familiarity with the underlying facts and procedural history in this case.

### I. Motion to Terminate for Repapering

Kadriovski first argues that the BIA erred in denying his motion to terminate for "repapering" pursuant to § 309(c)(3) of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009. We review the BIA's denial of a motion for abuse of discretion. *See, e.g., Zheng v. U.S. Dep't. of Justice*, 416 F.3d 129, 130 (2d Cir.2005).

In 1996, IIRIRA eliminated the discretionary relief of suspension of deportation under former section 244 of the Immigration and Nationality Act ("INA"), and, along with the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), retroactively changed the date for calculating the seven-year physical presence period for suspension of deportation eligibility under former section 244 ("retroactive stop-time rule"). IIRIRA § 309(c)(5), Pub.L. No. 104–208, 110 Stat. 3009–546, 3009–627; NACARA § 203(a)(1), Pub.L. No. 105–100, 111 Stat. 2160, 2196. Ultimately, the date for calculating the seven-year physical presence period was changed from the date an alien filed an application for suspension of deportation to the date the alien had been served with a show cause order, now known as a Notice to Appear. IIRIRA § 309(c)(5), 110 Stat. at 3009–627 (changing the date retroactively to the date of the Notice to Appear); NACARA § 203(a)(1), 111 Stat. at 2196 (amending IIRIRA to modify the date to the date of the show cause order). The retroactive stop-time rule rendered some aliens, who previously had been eligible for suspension of deportation, ineligible for relief because they no longer satisfied the physical presence requirement of former section 244. *See* Delegation of Authority to the Immigration and Naturalization Service to Terminate Deportation Proceedings and Initiate Removal Proceedings (hereinafter "Delegation to the INS"), 65 Fed.Reg. 71273, 71274 (proposed Nov. 30, 2000) (to be codified at 8 C.F.R. § 240.3). Because some of

these aliens were potentially eligible for cancellation of removal relief under the new section 240A(b), the Attorney General, pursuant to the discretion granted to him or her by IIRIRA § 309(c)(3), proposed a rule permitting "an alien rendered ineligible for relief in deportation proceedings by the [retroactive stop-time rule], but who would be eligible for relief in removal proceedings, to seek termination of his or her deportation proceeding and initiation of removal proceedings in order to apply for relief under the current legal standards." Delegation to the INS, 65 Fed.Reg. at 71274. This process of terminating cases instituted prior to the effective date of IIRIRA and then reinstating the proceedings as removal actions governed by the amended statutory scheme is referred to as "repapering." *Id.; see also Rojas–Reyes v. INS,* 235 F.3d 115, 125 (2d Cir. 2000). In anticipation of the Attorney General's promulgation of repapering regulations, the then Vice Chair of the BIA, Lori L. Scialabba, issued a memorandum entitled "Non Lawful Permanent Resident Repapering," ("Scialabba Memo"), that reiterated the BIA's previously announced "plans to administratively close the proceeding of any alien who appears eligible for non-LPR repapering." Memorandum of Lori L. Scialabba, Vice Chair of the BIA, dated March 14, 2000 ("Scialabba Memorandum"), *available at* http://www.usdoj.gov/eoir/chip6.pdf.

Before the BIA, Kadriovski argued that he satisfied the criteria for repapering set forth in the Scialabba Memorandum. Before this Court, however, he challenges the agency's policy of limiting repapering to admitted aliens as arbitrary and capricious and contrary to the plain language of IIRIRA. He also challenges the agency's failure to comply with the notice and comment requirement of the Administrative Procedure Act ("APA") in announcing its repapering policy. *See* APA, 5 U.S.C. § 553(b). The government contends that Kadriovski's arguments should not be considered because he failed to exhaust them before the BIA. We need not decide the matter, however, because even assuming, *arguendo,* as Kadriovski argues, that the issues raised herein are subsidiary to those raised to the BIA and thus need not have been exhausted, *Gill v. INS,* 420 F.3d 82, 87 (2d Cir.2005), or that waiver of the exhaustion requirement is appropriate, *Bastek v. Fed. Crop Ins. Co.,* 145 F.3d 90, 94 n. 4 (2d Cir.1998), his arguments are without merit.

■ Section 309(c)(3) of the IIRIRA provides, in pertinent part, that "the Attorney General may elect to terminate proceedings in which there has not been a final administrative decision and to reinitiate proceedings under ... [the INA] (as amended by this subtitle)." IIRIRA § 309(c)(3). Kadriovski argues that because the plain language of this provision does not distinguish between aliens in exclusion and deportation proceedings, the Scialabba Memorandum arbitrarily and capriciously limited repapering to aliens in deportation proceedings in contravention of the plain language of the statute. When reviewing an agency's construction of the statute it administers, we will reject the agency's interpretation only if it is unreasonable or contrary to clear congressional intent. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). An agency's action will be deemed "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explana-

tion for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

Here, although Congress did not distinguish between aliens in exclusion and deportation proceedings when enacting IIRIRA, it also did not require the Attorney General to permit repapering in any specific cases. *See* IIRIRA § 309(c)(3) (providing that "the Attorney General *may elect*" to allow repapering) (emphasis added); *see also Rojas–Reyes*, 235 F.3d at 125 (recognizing that "IIRIRA § 309(c)(3) confers complete discretion on the Attorney General regarding whether to repaper a particular case"). Thus, the agency's decision to allow repapering for those aliens in deportation proceedings who were negatively affected by the IIRIRA's retroactive stop-time rule, but not for aliens in either deportation or exclusion proceedings who had not been adversely impacted by the IIRIRA, was not contrary to clear congressional intent. *See Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778; *see also Rojas–Reyes*, 235 F.3d at 125–26.

Moreover, acting pursuant to the broad discretion conferred by IIRIRA § 309(c)(3), the agency did not arbitrarily predicate repapering on whether or not an alien has been admitted, as Kadriovski contends; instead, the agency predicated repapering on preventing harm to aliens retroactively denied relief by the enactment of IIRIRA. Delegation to the INS, 65 Fed.Reg. at 71274. Kadriovski's conclusory arguments that it was "arbitrary and capricious for the regulations to predicate repapering upon whether or not [an]

alien has been admitted ... and that the purpose of 'repapering' should be to permit aliens in pre-IIRIRA proceedings to benefit from IIRIRA," do not demonstrate that the agency's exercise of discretion, which did not contradict the plain language of IIRIRA § 309(c)(3), was arbitrary or capricious.

■ Kadriovski also argues that the Scialabba Memorandum violated the APA, 5 U.S.C. § 553(b), because it promulgated a rule without complying with the APA's notice and comment requirement. The notice and comment requirement "applies to legislative rules, but it does not apply to 'interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.'" *Mejia–Ruiz v. I.N.S.*, 51 F.3d 358, 363 (2d Cir.1995) (quoting 5 U.S.C. § 553(b)(A)). Accordingly, where an agency acts to clarify ambiguities in an existing statute or regulation, the rule is interpretative and the APA's notice and comment requirement does not apply. *Id.* at 363–64 (citing *White v. Shalala*, 7 F.3d 296, 303 (2d Cir. 1993)). Here, the agency clarified under which circumstances it would exercise the discretion conferred in IIRIRA § 309(c)(3). *See* Delegation to the INS, 65 Fed.Reg. at 71274. Even though it appears that such a clarification would be an interpretive rule not subject to the APA's notice and comment requirement, the Attorney General issued a proposed rule and allowed time for comments in compliance with the APA. *Id.* For these reasons, we conclude that the BIA did not err in denying Kadriovski's motion.

## II. Denial of Asylum and Withholding of Deportation

■ On appeal, we ordinarily review the BIA's decision and not the IJ's underlying

decision. *Secaida–Rosales v. I.N.S.*, 331 F.3d 297, 305 (2d Cir.2003). When the BIA agrees with the IJ's conclusion that a petitioner is not credible and, without rejecting any of the IJ's grounds for the decision, emphasizes particular aspects of that decision, this Court reviews both the BIA's and IJ's opinions—or more precisely, the Court reviews the IJ's decision including the portions not explicitly discussed by the BIA. *Yun–Zui Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir.2005). This Court reviews the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Zhou Yun Zhang v. INS*, 386 F.3d 66, 73 & n. 7 (2d Cir.2004). Upon review, we find that the IJ's adverse credibility determination was supported by substantial evidence.

We have said that "striking similarities between affidavits are an indication that the statements are 'canned.'" *Mei Chai Ye v. U.S. Dep't of Justice*, 489 F.3d 517, 524 (2d Cir.2007) (citation omitted). Thus, the IJ did not err in basing her adverse credibility determination, in part, on the essentially identical statements of Kadriovski and his family members, or the resultantly vague and general nature of his claim. *See Surinder Singh v. BIA*, 438 F.3d 145, 148 (2d Cir.2006) (determining an IJ's adverse credibility determination to have been reasonably supported where the decision was partly grounded on significantly similar language in affidavits supporting an asylum application); *see also Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 152 (2d Cir.2003) (stating that an IJ may reasonably wonder if vague or spare testimony is fabricated).

Likewise, the IJ reasonably found that several inconsistencies and omissions in the record, which related to material elements of Kadriovski's claims, supported her adverse credibility determination. *See, e.g., Secaida–Rosales v. INS*, 331 F.3d 297, 308–09 (2d Cir.2003). For example, the IJ noted internal inconsistencies in Kadriovski's 1993 application where, in supporting his allegation of religious persecution, he first claimed that the Yugoslavian army killed everyone who was not of the Orthodox religion, but later stated that no religion was considered acceptable by the government. The IJ further observed that Kadriovski stated in his 1993 application that he had been forced to attend a course "every morning while in the army"; however, he testified at his hearing that he had fled his country to avoid being drafted into the army. Lastly, the IJ noted that Kadriovski omitted from his 2000 application the assertions made in his 1993 application that the army had occupied his town and that the army had forced him to attend a "Political Information" class. Such findings may be considered cumulatively in making an adverse credibility determination. *See Tu Lin v. Gonzales*, 446 F.3d 395, 402 (2d Cir.2006). And we reject Kadriovski's argument that it was inappropriate for the IJ to rely on his earlier submitted 1993 application. *Cf. Borovikova v. U.S. Dep't of Justice*, 435 F.3d 151, 158–59 (2d Cir.2006) (considering and comparing a petitioner's initial application with her supplemental affidavit in considering the petitioner's credibility).

█ Finally, an IJ may reasonably consider country reports in determining whether an applicant's testimony is credible. *See Tu Lin*, 446 F.3d at 400. Here, the IJ correctly found that, at most, the country reports in the record detailed a

political tension between ethnic Albanians and ethnic Macedonians, but did not indicate a likelihood that Kadriovski would be persecuted on account of his religion. Thus, the IJ did not act unreasonably in concluding that Kadriovski's testimony to the contrary supported her adverse credibility finding.

 Because we find the IJ's adverse credibility determination supported by substantial evidence in the record, the IJ acted reasonably in denying Kadriovski's asylum claim. Further, because the only evidence of a threat to Kadriovski's life or freedom depended upon his credibility, the adverse credibility determination in this case necessarily precluded success on his claim for withholding of removal. *See, e.g., Paul v. Gonzales,* 444 F.3d 148, 156 (2d Cir.2006).

For the foregoing reasons, the petition for review is DENIED. Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).