10-2289-ag
Zheng v. Holder

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 7th day of March, two thousand and twelve.

PRESENT:

JOSÉ A. CABRANES,
DEBRA ANN LIVINGSTON,
SUSAN L. CARNEY,
    *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MINDENG ZHENG,

    *Petitioner,*

    -v.-                                                    No. 10-2289-ag

ERIC H. HOLDER, JR., United States Attorney General,

    *Respondent.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FOR PETITIONER:**          Michael Brown, New York, NY.

**FOR RESPONDENT:**          Dana M. Camilleri, Trial Attorney (Tony West, Assistant Attorney General, Ernesto H. Molina, Jr., Assistant Director, *on the brief*), Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.

Petition for review of a decision of the Board of Immigration Appeals.

1

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DISMISSED in part and DENIED in part.

Mindeng Zheng, a native and citizen of China, entered the United States in 1991. In 1993, Zheng filed an application for asylum, alleging that he had been persecuted in China because of his involvement in the 1989 pro-democracy student movement. In 1997, Zheng was served with a Notice to Appear ("NTA"), charging him with removability as an alien not in possession of valid entry documents. In September 1998, after Zheng failed to appear at a scheduled hearing, an immigration judge ("IJ") issued a removal order *in absentia* against him.

In June 1999, Zheng filed a motion to reopen with the immigration court, alleging that he was eligible for protection under the Convention Against Torture ("CAT"). Later that year, an IJ reopened Zheng's proceedings for consideration of CAT relief. In 2000, Zheng again failed to appear before an IJ, whereupon the IJ issued a second *in absentia* order of removal, finding that Zheng, at a prior hearing, had admitted the factual allegations in the NTA and thereby conceded removability, and had thereafter abandoned his application for relief by failing to appear.

Despite having been ordered removed *in absentia*, Zheng failed to leave the United States. He instead married a U.S. citizen wife, with whom he had a U.S. citizen child in 2005. He alleges that he learned in 2008 that officials from his home town of Changle City (in Fujian Province) had visited his father's home in China in order to threaten Zheng with arrest. A notice from the DongGuan Community Residential Committee (the "Notice") was allegedly posted on Zheng's father's door stating that Zheng's activities in the United States—which included his 1993 application for asylum and past political activism—would interfere with the successful hosting of the 2008 Olympic Games and would therefore not be tolerated. Zheng was allegedly ordered to return to China for punishment, and his father was told that if he did not do so, Zheng would be punished even more severely.

Shortly after he claims he learned of the Notice, Zheng filed a second motion to reopen the proceedings, asking the immigration court to rescind his second *in absentia* order of removal and rehear

his case on the merits.[1] Zheng stated that he discovered in March 2000 that he had been ordered removed *in absentia*, but he did not file a motion to reopen then because he received uncertain advice from immigration agencies and friends. In support of his motion, Zheng argued that the motion was exempt from the time limitations on such motions because, although the immigration court sent a notice of hearing to his attorney, he himself never received notice because the attorney never conveyed the scheduled hearing date to him. Zheng further asserted that within 30 days of filing his motion he would file an ineffective assistance of counsel claim against his attorney if it were deemed necessary by the IJ. Additionally, Zheng argued that his proceedings should be reopened because: (1) his wife had filed an I-130 immediate relative petition on his behalf; and (2) he feared persecution in China because of the government's increased persecution of its critics in the run up to the Olympic Games, as the authorities there had discovered that he had applied for asylum in the United States, and, as a result, had visited his family, and ordered him to stop criticizing the government and return to China for punishment. In support of the latter argument, Zheng provided his own affidavit, the affidavit of his father, a document he alleged to be the Notice, and background material on an asserted increase in persecution of political dissidents in China in advance of the 2008 Olympic Games.

In a decision rendered on September 18, 2008, an IJ denied Zheng's motion to reopen as untimely. The IJ found that: (1) the record of proceedings indicated that his attorneys received proper notice of the hearings; (2) Zheng had not established ineffective assistance of counsel because he had not complied with the requirements of *Matter of Lozada*, 19 I. & N. Dec. 637 (B.I.A. 1988); and (3) because Zheng waited over eight years to seek reopening, he had not demonstrated the due diligence in pursuing his ineffective assistance of counsel claim required to toll the time limitations on motions to rescind or reopen. Additionally, the IJ found that Zheng's motion did not establish "a relevant and

---

[1] The portion of Zheng's motion to reopen that is based on an alleged lack of notice is more properly cast as a separate motion to rescind the agency's *in absentia* order of deportation. "[A]lthough a motion to rescind is a type of motion to reopen, it is distinctive in that a 'motion to reopen for purposes of rescinding an in absentia [removal] order . . . seeks to restart proceedings as if the previous proceedings never occurred.'" *Alrefae v. Chertoff*, 471 F.3d 353, 357 (2d Cir. 2006) (quoting *Maghradze v. Gonzales*, 462 F.3d 150, 152 n.1 (2d Cir. 2006)). However, because the distinction between a motion to reopen and a motion to rescind relates only to the available remedy, *see id.*, and because we find that any separate motion to rescind would be meritless, we treat Zheng's filing as a single integrated motion to reopen.

significant" change in conditions in China which would exempt his motion from the time limitations on motions to reopen.

Zheng appealed to the BIA, arguing that: (1) his motion to reopen was appropriate since he was a beneficiary of an I-130 petition from his U.S. citizen wife; (2) he had established changed country conditions, thereby exempting his motion from the time limits; (3) the IJ erred in finding that he had submitted only copies of documents, as he had submitted the originals in a supplemental packet; and (4) his motion to reopen had not included a claim of ineffective assistance of counsel, but rather had asked the IJ for an opportunity to bring such a complaint if the IJ thought it was appropriate.

In a May 17, 2010 decision, the BIA denied Zheng's appeal. The BIA found that the IJ had correctly denied Zheng's motion as Zheng had failed to demonstrate that he exercised due diligence in pursuing his case and had failed to comply with the requirements of *Lozada*. Additionally, the BIA found that because Zheng's motion was untimely, the IJ's denial of his request for reopening to apply for adjustment of status was correct. Finally, the BIA found that Zheng's proffered new evidence, purportedly showing that the Chinese authorities sought to punish him because they had discovered that he had applied for asylum and spoken against the government, did not establish changed country conditions because: (1) his documents were not properly authenticated; and (2) his allegations, even if true, established changed personal circumstances, not changed country conditions.

Zheng filed a timely petition for review of the BIA's decision with this Court. In his brief, Zheng argues that the BIA abused its discretion by: (1) failing to consider his eligibility for adjustment of status; (2) dismissing his motion to reopen for failure to comply with *Lozada* or establish due diligence; (3) improperly discounting the evidentiary value of the documents he offered to support his claim; and (4) finding that he could not establish changed country conditions but only changed personal conditions. In response, the government argues that the BIA did not err, or "abuse its discretion," in any of these respects.

## DISCUSSION

A.    *Standard of Review*

We review the BIA's denial of a motion to reopen for "abuse of discretion." *Kaur v. BIA*, 413

4

F.3d 232, 233 (2d Cir. 2005). "We will identify such abuse only if the BIA's decision-making was arbitrary or capricious, as evidenced by a decision that provides no rational explanation for the agency's conclusion, . . . is devoid of any reasoning, or contains only summary or conclusory statements." *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 169 (2d Cir. 2008) (internal quotation marks and citations omitted); *see generally Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining the term of art "abuse of discretion" as including errors of law).

B.       *Motion to Reopen*

i.       *Lack of Notice*

Zheng argues that the BIA abused its discretion by addressing his motion to reopen as one based on having received ineffective assistance from his immigration counsel, rather than as a petition to rescind the IJ's March 2000 *in absentia* removal order due to his alleged lack of notice of the hearing. While rescission for lack of notice may be granted at any time, 8 C.F.R. § 1003.23(b)(4)(iii)(A)(2),[2] rescission because a petitioner received ineffective assistance of counsel may be granted only upon a showing of due diligence and by otherwise complying with the requirements of *Lozada*, 19 I. & N. Dec. 637. By casting his motion as one based on ineffective assistance of counsel, Zheng argues, the BIA applied an incorrect standard of proof and thereby abused its discretion or erred.

Zheng's argument is meritless. He could have corrected the agency's characterization of his application by informing either the IJ or the BIA of the intended basis for his motion, thereby giving himself the opportunity to directly argue for rescission based on lack of notice, but he evidently chose not to do so.[3] Further, because he did not correct the agency, and therefore did not argue to the BIA that he merited rescission under 8 U.S.C. § 1229a(b)(5)(C)(ii),[4] he has failed to exhaust his administrative

---

[2] "(A) An order entered *in absentia* in deportation proceedings may be rescinded . . . upon a motion to reopen filed . . . (2) [a]t any time if the alien demonstrates that he or she did not receive notice . . . and the failure to appear was through no fault of the alien." 8 C.F.R. § 1003.23(b)(4)(iii)(A)(2).

[3] In fact, in a memorandum of law submitted to the BIA Zheng alleged that the IJ had erroneously denied him the opportunity to file a complaint against his former counsel pursuant to *Lozada*. Zheng cannot now argue that the BIA's invocation of *Lozada* was improper.

[4] An order of removal *in absentia* may be rescinded only "upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice . . . [or] the alien demonstrates that . . . the failure to appear was through no fault of the alien." 8 U.S.C. § 1229a(b)(5)(C)(ii).

remedies with regard to that basis for relief. Accordingly, we are without jurisdiction to consider this argument. 8 U.S.C. § 1252(d)(1) (providing that this Court "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right"); *Karaj v. Gonzales*, 462 F.3d 113, 119 (2d Cir. 2006) (explaining that this jurisdictional rule is absolute with respect to the requirement that on appeal to the BIA the alien must raise each category of relief subsequently raised in this Court).

The portion of Zheng's appeal that is related to his alleged lack of notice—what could be called a motion to rescind under 8 U.S.C. § 1229a(b)(5)(C)(ii)—is dismissed for want of jurisdiction. We now turn our attention to whether the agency abused its discretion in denying his motion to reopen under 8 U.S.C. § 1229a(c)(7).

ii. *Adjustment of Status*

Zheng's motion to reopen so that his status could be adjusted on the basis of his wife's citizenship was indisputably time-barred as it was not filed within 90 days of the entry of the order of removal. Indeed, it was filed more than eight years after the entry of his removal order. *See* 8 U.S.C. § 1229a(c)(7)(C)(i).[5] Insofar as Zheng sought reopening based on his application for adjustment of status, the agency did not abuse its discretion in denying the motion as untimely because an adjustment application is not an exception to the time limitation. *See* 8 C.F.R. § 1003.2(c)(3)(i)-(iv);[6] *Ali v. Gonzales*, 448 F.3d 515, 516–17 (2d Cir. 2006) (holding that the BIA did not abuse its discretion in denying as untimely a motion to reopen in order to apply for adjustment of status).

_____

[5] "Except as provided [in several exceptions inapplicable here], the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i).

[6] Insofar as it is relevant here, 8 C.F.R. § 1003.2(c) provides as follows:
> (3) [T]he time limitation . . . shall not apply to a motion to reopen proceedings:
> (i) Filed [under certain inapplicable circumstances];
> (ii) To apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing;
> (iii) Agreed upon by all parties . . .; or
> (iv) Filed by the [INS] in exclusion or deportation proceedings when the basis of the motion is fraud in the original proceeding or a crime that would support termination of asylum . . . .

iii.    *Asylum*

Zheng also sought reopening so that he could bring a petition for asylum. There is no time limitation on motions to reopen to apply for asylum if the alien establishes materially "changed country conditions arising in the country of nationality." 8 U.S.C. § 1229a(c)(7)(C)(ii); *see also* 8 C.F.R. § 1003.2(c)(3)(ii). The IJ denied Zheng's motion to reopen on this basis, finding that he had not established changed country conditions. The BIA affirmed, first finding that Zheng's evidence was inadequate because it was not authenticated, and then noting, in the alternative, that even if the evidence were authentic and adequate, Zheng had alleged only a change in his personal circumstances and thus could not establish changed country conditions. We find that the former conclusion of the BIA was erroneous. Nevertheless, the BIA's alternative conclusion—that Zheng's evidence, even if authenticated, could not support a claim of changed country conditions—was supported by substantial evidence and legally sufficient for it to deny relief. We therefore deny Zheng's petition for review.

a.    *Authentication of Documents*

The BIA erred when it found that Zheng's country conditions evidence was of insufficient evidentiary value because it had not been authenticated. The BIA's decision did not explain how it expected Zheng to further authenticate his documents—which consisted of sworn affidavits from both Zheng and his father, as well as the alleged Notice from the village committee—but based on the BIA's invocation of *Qin Wen Zheng v. Gonzales*, 500 F.3d 143 (2d Cir. 2007), we assume the BIA expected Zheng to seek an attestation from a Chinese official that the documents were genuine. *See* 8 C.F.R. § 287.6 (agency regulations providing that certain foreign documents should be attested to by a foreign government official). However, "'asylum applicants can not always reasonably be expected to have an authenticated document from an alleged persecutor.'" *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 404 (2d Cir. 2005) (quoting *Gui Cun Liu v. Ashcroft*, 372 F.3d 529, 532 (3d Cir. 2004)) (holding that an IJ may not reject an asylum seeker's document solely because the document was not authenticated pursuant to regulation); *see also Qin Wen Zheng*, 500 F.3d at 148 (absent an adverse credibility determination, "the IJ errs if he or she rejects a document supporting the application solely because it was not properly authenticated under the BIA's regulations").

7

b.    *Changed Circumstances*

Although the BIA erred in finding that Zheng's documents had not been properly authenticated, it provided an adequate alternative basis for its adverse ruling, leading us to conclude that "remand would be futile." *Singh v. B.I.A.*, 438 F.3d 145, 150 (2d Cir. 2006). After determining that Zheng's documents would not be credited, the agency went on to note that even if it were inclined to credit Zheng's evidence regarding the alleged persecution that awaited him in China, such persecution would establish "at most a change in [his] personal circumstances," and could not suffice to establish a change in country conditions.[7] This conclusion, which is supported by substantial evidence in the record, was a sufficient basis for the BIA to deny relief.

We therefore decline to remand Zheng's petition to the BIA as "there is no realistic possibility that, absent the errors, the . . . BIA would have reached a different conclusion." *Cao He Lin*, 428 F.3d at 401; *see also Singh*, 438 F.3d at 149 (remand unnecessary where "despite the IJ's errors, 'we can state with confidence that the IJ would adhere to his decision were the petition remanded' (quoting *Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 161 (2d Cir. 2006)).

CONCLUSION

In sum, the petition for review is

(1) DISMISSED as to the motion to reopen based on a lack of notice or on the allegedly ineffective assistance of counsel; and

(2) DENIED as to the motion to reopen for adjustment of status and for asylum.

---

[7] Changed personal circumstances may include, for example, the birth of a second child (illegal under China's "one child" policy), participation in a democratic political movement, or conversion to a new religion such as Christianity or Falun Gong. *See, e.g.*, *Yuen Jin v. Mukasey*, 538 F.3d 143, 155 (2d Cir. 2008). Changed circumstances in the country of origin, by contrast, often include broad national (or regional) changes, such as, for example, an increase in anti-Semitism, *see Poradisova v. Gonzales*, 420 F.3d 70, 81–82 (2d Cir. 2005), or purported changes to the enforcement of China's family planning policy, *see Shao*, 546 F.3d at 168–70. Highly localized persecution such as the city-wide policy alleged by Zheng generally will not be considered to be a changed country circumstance sufficient to excuse an untimely asylum petition. *See, e.g.*, *Santoso v. Holder*, 580 F.3d 110, 112 (2d Cir. 2009).

8

Having completed our review, any stay of removal that the Court previously granted in this proceeding is VACATED, and any pending motion for a stay of removal in this proceeding is DENIED as moot.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court