*Singh v. Whitaker*

BIA
Rohan, IJ
A205 580 906

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of February, two thousand nineteen.

PRESENT:
> ROBERT A. KATZMANN,
> *Chief Judge*,
> ROSEMARY S. POOLER,
> SUSAN L. CARNEY,
> *Circuit Judges*.

_____

BALJIT SINGH,
> *Petitioner*,

v.                                                                   No. 17-414 (NAC)

MATTHEW G. WHITAKER, ACTING UNITED
STATES ATTORNEY GENERAL,
> *Respondent*.

_____

FOR PETITIONER:          Daniel G. Anna, Anna & Anna, P.C., Media, PA.

FOR RESPONDENT:          Chad A. Readler, Civil Division; Terri J. Scadron, Christina P. Greer, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review of a Board of Immigration Appeals ("BIA") decision is **GRANTED**, the decision of the BIA is **VACATED**, and the case is **REMANDED** for further proceedings consistent with this order.

Petitioner Baljit Singh, a native and citizen of India, seeks review of a January 12, 2017 decision of the BIA affirming an April 22, 2016 decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Baljit Singh,* No. A205 580 906 (B.I.A. Jan. 12, 2017), *aff'g* No. A205 580 906 (Immig. Ct. N.Y. City Apr. 22, 2016). We assume the parties' familiarity with the underlying facts and the procedural history of the case, to which we refer only as needed to explain our decision to grant Singh's petition.

Where the BIA affirms the decision of the IJ, adopting part but not all of the IJ's reasoning, we review the decisions of both the IJ and the BIA. *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 166 (2d Cir. 2008) (per curiam). In this case, the BIA adopted four of the IJ's findings regarding Singh's testimony and the affidavits Singh submitted in support of his application. The BIA concluded that these findings, standing alone, were "sufficient to support an adverse credibility determination." Special App. at 3 n.1. Because we conclude that the agency erred with respect to its analysis of two of these findings, we grant Singh's petition and remand the case to the BIA for further consideration.

## I.    The Affidavits

Both the BIA and the IJ erroneously determined that four similar affidavits submitted by Singh supported the IJ's adverse credibility determination. *Id.* at 3, 27. Specifically, the IJ found that "all four affidavits contain statements with a similar linguistic structure, and in fact, the

2

affidavits from the Respondent's parents are virtually identical and share many similarities with the affidavits from Mohinder Singh [a neighbor of Singh's parents]." *Id.* at 27 (citing *Singh v. Bd. of Immigration Appeals* (*Singh I*), 438 F.3d 145, 148 (2d Cir. 2006) (per curiam)). As the IJ noted, all four affidavits were "notarized on the same day, August 1, 2015, and by the same notary, Arjan Singh." *Id.* On this basis, the IJ gave the "affidavits minimal evidentiary weight" and, further, found "that they undermine the Respondent's credibility." *Id.*

While it was reasonable for the agency to give these affidavits little weight, it was not reasonable to draw an adverse credibility inference against Singh himself without explicitly finding that he fabricated the content of affiants' testimony. The IJ cites *Mei Chai Ye v. U.S. Dep't of Justice*, 489 F.3d 517, 524 (2d Cir. 2007), and *Singh I*, 438 F.3d at 148, for the proposition that striking similarities between affidavits are enough to draw an adverse inference against an applicant. But a closer reading of these cases reveals that they do not stand for such a broad proposition.

In *Ye* we noted that "*in most cases*," but not in all cases, "it is reasonable and unproblematic for an IJ to infer that an applicant who herself submits the strikingly similar documents is the common source of those suspicious similarities." 489 F.3d at 519 (emphasis added). And, although *Ye* concerned inter-proceeding similarities, some innocuous explanations for inter-proceeding similarities between affidavits that we noted in *Ye* apply equally to intra-proceeding similarities between affidavits. For example, such similarities may result simply because affiants "are inserting wholly truthful information into standardized templates," or because affiants were "illiterate and related their stories to the same scrivener who wrote them up in his own-unchanging-locution" or because translators "inserted [the similarities] into the documents" and not "the applicants themselves." *Id.* at 524.

3

*Singh I*, the only case *Ye* cites regarding intra-proceeding similarities, also provides little guidance, since the panel in *Singh I* did not analyze the issue. The panel merely mentioned identical affidavits in a list of many factors that the agency properly considered as bearing on the respondent's credibility. 438 F.3d at 148. In fact, a review of the record in *Singh I* reveals that the agency in that case did *not* determine that respondent's similar affidavits undermined his credibility because they were similar: the agency determined only that the affidavits, which it noted were similar, *failed to corroborate his testimony*. *See Singh I*, CAR 53-54 ("[T]he three affidavits proffered by the respondent are nearly identical in language. The Court considers it highly prejudicial to the respondent's claim that corroborating evidence proffered by him from an individual who . . . would have been in a position to provide more detailed evidence with regard to the incident and the respondent's condition in no way corroborates his claim.").

Here, the IJ did not explicitly determine that Singh likely fabricated the content of the four affidavits. Moreover, on this record, it would not be "reasonable and unproblematic," *Ye*, 489 F.3d at 519, for the agency to determine that Singh was responsible for the similarities between the affidavits. The affidavits were made by four members of a small, rural village in India, who used the same notary on the same day. Singh's parents or the notary, not Singh himself, were likely the source of the similarities. Accordingly, absent further analysis by the agency, its findings regarding the affidavits are impermissibly speculative and cannot support its adverse credibility determination against Singh. *See Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 157 (2d Cir. 2006), *modified on reh'g*, 471 F.3d 315 (2d Cir. 2006) (explaining that our review is designed to "ensure merely that [an IJ's] credibility findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice") (internal quotation markets omitted).

## II.     Treatment of Singh's Father

Although Singh does not raise the issue on appeal, the BIA also erred when it affirmed the IJ's adverse credibility finding based in part on Singh's failure to "adequately explain why his father—who was an active member of the same political party . . . for a longer period—was not also arrested." Special App. at 3. In fact, the IJ did *not* consider the father's arrest history in finding Singh not credible. Instead, the IJ found that Singh "testified credibly about his religious beliefs as a Sikh and his membership in the Mann Party despite . . . his weak answer for why his father did not face similar repercussions even though he was also very actively involved with Party activities and had been for longer than [Singh]," *id.* at 26, and that there remains a "question as to why [Singh] was *singled out for threats and physical abuse* for his membership [in the Mann party], but yet similar claims were not asserted by [Singh] regarding his father's involvement and any repercussions that he might have faced," *id.* at 28 (emphasis added). According to the IJ, it was this second "troubling aspect[] of [Singh's] testimony" that supported an adverse credibility determination. *Id.*

But there is no support in the record for the IJ's finding that Singh was implausibly "singled out" for threats and physical abuse. Rather, Singh testified that his father *was* persecuted by the police:

> Mr. Goldman: Was [your father] persecuted by the police?
> Mr. Singh: Police harassed him — harass him.
> Mr. Goldman: They do?
> Mr. Singh: Yes.
> Mr. Goldman: Do they ever beat him?
> Mr. Singh: They would threaten him. They could curse him. . . .
> Mr. Goldman: And yet the police never arrested your father, correct?
> Mr. Singh: He just do threats and beaten up. Never arrested.

CAR at 99-101. In other words, *contra* the IJ, Singh *did* assert claims of "threats and physical abuse" regarding his father.

5

Additionally, although the record supports the BIA's assertion that Singh was arrested and that his father was not, *see id.* at 101 ("Mr. Goldman: But you've been arrested. Mr. Singh: Yes."); *id.* at 101-02 ("Mr. Goldman: Do you have any ideas why your father was never arrested but you were part of being arrested? Mr. Singh: They didn't arrest my dad. They would beat him up and they arrested me . . . The reason he wasn't arrested, I don't know."), neither the BIA nor the IJ properly considered whether it was plausible that Singh would have been arrested while his father was not. Rather, the agency proceeded as if Singh's father had not been harassed or threatened at all—a much greater discrepancy than the record reflects.

Also on this score, we note that nothing in the record indicates that Singh's father was a more important member of the party than Singh. *See id.* at 96-97 ("Mr. Goldman: Is [your father] a local leader of the Mann party? Mr. Singh: No. He's a worker. . . . [W]herever rallies [are] going to be held he will post the poster there and tell the people that rally is going to be held here.").[1] Indeed, other evidence suggests some possible explanations for the discrepancy in how Singh and his father were treated, which the agency failed to consider. For example, Singh's father attests in his affidavit that the ruling "Congress party . . . compelled *youth* to join their party" and that the police arrested Singh after asking him "to join [the] Congress party which he refused." *Id.* at 177 (emphasis added). Accordingly, Singh's inability to explain why the police threatened and harassed him but did not arrest his father does not support an adverse credibility finding, at least in the absence of further analysis by the agency.

---

[1] In fact, the record suggests that Singh may have been *more* involved than his father. For example, while Singh testified that his father posted posters and steered people to the rallies, Singh testified that he posted posters and attended rallies *and sit-ins*.

## III. Conclusion

Although in its otherwise thorough opinion, the IJ reasonably relied on the inconsistency and vagueness of Singh's testimony concerning the attacks he claimed to have suffered between March and May 2013, *see Xiu Xia Lin*, 534 F.3d at 163-64; *Li v. Mukasey*, 529 F.3d 141, 147 (2d Cir. 2008) ("A fact finder may understandably find detailed testimony more convincing than vague testimony."), and we defer to the agency's findings regarding the absence of any corroboration from Singh's sister, *see Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007) (per curiam), we cannot "state with confidence that the [agency] would adhere to [its] decision were the petition remanded," *Xiao Ji Chen*, 434 F.3d at 161, since the BIA determined that the four bases it cited were "sufficient to support" the IJ's adverse credibility determination and expressly declined to address the other factors on which the IJ relied, leaving open the "realistic possibility that, absent the errors, [it] would have reached a different conclusion," *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 401 (2d Cir. 2005).

Accordingly, the petition for review is **GRANTED**, the decision of the BIA is **VACATED**, and the case is **REMANDED** to the BIA for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court