05-5741-ag
Qin Wen Zheng v. Gonzales

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2006

(Submitted:  March 21, 2007    Decided:  August 31, 2007
                                Errata Filed: September 20, 2007)
Docket No. 05-5741-ag

--------------------------------------

QIN WEN ZHENG,

Petitioner,

- v -

ALBERTO R. GONZALES,
Attorney General of the United States

Respondent.

--------------------------------------

Before:   SACK, PARKER, and HALL, Circuit Judges.

Petition for review of a decision by the Board of Immigration Appeals denying the petitioner's motion to reopen his asylum proceedings.  The Board did not abuse its discretion in determining that the petitioner failed to demonstrate changed country conditions.

Petition denied.

Michael Brown, New York, NY, for Petitioner.

Margaret A. Hickey, Assistant United States Attorney for the Northern District of Illinois (Patrick J. Fitzgerald, United States Attorney, Craig Oswald, Assistant United States Attorney, on the brief), Chicago, IL, for Respondent.

SACK, Circuit Judge:

Qin Wen Zheng, a Chinese citizen from Changle City in the Fujian Province of China, petitions for review of a decision by the Board of Immigration Appeals ("BIA") denying his second motion to reopen proceedings in his case as untimely and numerically barred under 8 C.F.R. § 1003.2(c)(2). In re Qin Wen Zheng, No. A 77 224 430 (B.I.A. Oct. 18, 2005); see also 8 C.F.R. § 1003.2(c)(3)(ii) (allowing for one motion to reopen filed within ninety days of the final agency decision). Zheng contends that the BIA wrongly determined that he failed to demonstrate changed country conditions in China that might exempt the motion from those bars. As particularly relevant here, Zheng argues that the BIA erred in rejecting for lack of authentication a purported notice from a municipal government in China threatening him with "severe[] punish[ment]" if he did not abandon his application for asylum and return to China forthwith.

## BACKGROUND

Zheng arrived in the United States in July 1998. He applied for asylum, withholding of removal, and relief under the Convention Against Torture[1] ("CAT") based on the alleged forced sterilization of his wife under the Chinese family-planning policy. At a hearing before Immigration Judge ("IJ") Adam

---

[1] United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85. See also 8 C.F.R. § 208.16(c) (implementing regulations).

Opaciuch, Zheng conceded removability. He testified and submitted documentary evidence in support of his claims. On June 23, 2000, the IJ denied Zheng's requests for relief, determining that his testimony was not credible because it was inconsistent with his prior statements and other documentary evidence, and that he, therefore, failed to meet his burdens of proof. In re Qin Wen Zheng, No. A 77 224 430 (Immig. Ct. N.Y. City June 23, 2000). Zheng appealed to the BIA, which affirmed the IJ's decision, without opinion, on November 21, 2002. In re Qin Wen Zheng, No. A 77 224 430 (B.I.A. Nov. 21, 2002). Zheng did not petition this Court for review of that decision.

In October 2003, Zheng filed a motion to reopen his removal proceedings. He again argued the merits of his asylum claim and submitted, inter alia, affidavits from, and photographs of, his wife and children in China. On April 19, 2005, the BIA denied the motion, finding that Zheng had filed the motion beyond the ninety-day time limit and had failed to establish changed circumstances that would permit a late filing. In re Qin Wen Zheng, No. A 77 224 430 (B.I.A. Apr. 19, 2005). Again, Zheng refrained from petitioning this Court for review.

In August 2005, Zheng filed a second motion to reopen, claiming that he was newly eligible for relief based on changed country conditions in China. He submitted a variety of documents in support of his motion, including various country reports from the United States Department of State, the governments of the United Kingdom and Canada, and Amnesty International; a newspaper

-3-

article; an internet printout of a Chinese law addressing the entry and exit of citizens to and from China; and a copy of a decision by the United States Court of Appeals for the Ninth Circuit. He also submitted a notice allegedly sent to his wife from officials of his local village that, he contends, demonstrates that conditions had materially changed there.

<u>The Village Notice</u>

The notice that Zheng submitted was in Chinese accompanied by an English translation. Entitled "Notice" (we refer to it hereinafter as such), it is dated June 26, 2005, and its letterhead in the submitted English translation reads "Long Tian Villager Commission, Guhuai Town, Changle City, Fujian Province, China." It also appears to have a stamp on the lower right quadrant which is translated to read "Long Tian Villager Commission, Guhuai Town, Changle City." As translated, the Notice reads in its entirety:

> The government is currently investigating those people who had left the country illegally and applied for asylum in overseas. Their behaviors has damaged our countries' international image. From the report we received, we found out that your husband, Zheng Qin Wen is among those people. He not only violated the family planning policy in China, but also illegally left China and went to the United States wherein he did something detrimental to our country's dignity. It is hereby ordered that you must persuade your husband Zheng Qin Wen immediately stopping his asylum application in overseas, coming back to China and surrendering himself to the government to obtain a lenient treatment. Otherwise, he will be severely punished if he is arrested.

-4-

The Notice was supported solely, and only to some extent, by an affidavit from Zheng's wife.  Also translated from Chinese to English,[2] the affidavit rehearses the underlying assertions of Zheng's asylum application.  The affidavit also attempts to provide further context to the local government's crackdown against Chinese citizens who apply for asylum elsewhere, and generally reiterates the message and substance of the Notice.  It does not include any reference to the Notice.

### The BIA Opinion

The BIA was unpersuaded by Zheng's submission.  See In re Qin Wen Zheng, No. A 77 224 430 (B.I.A. Oct. 18, 2005) (per curiam).  "Much of the evidence now presented, including the wife's affidavit and background material," it said, "was not previously unavailable or is not new. . . .  The new country reports have not been highlighted. . . ."  Id.  The BIA continued:  "[T]he purported notice from the respondent's home town has not been authenticated, a fact which is relevant in the context of this case in light of the [IJ's] adverse credibility finding."  Id.  The agency denied Zheng's motion to reopen on the grounds that his evidentiary submissions failed to demonstrate changed country conditions, which could have excepted the motion from the time and numerical bars that otherwise apply.

Zheng petitions for review.

---

[2]  Although the text of the "Translation Certificate" refers to Lawrence He as the translator, the document is signed by Allen Chan.

**DISCUSSION**

I. Standard and Scope of Review

Zheng's petition to this Court, filed on October 26, 2005, is timely only as it pertains to the BIA's denial of his second motion to reopen on October 18, 2005. See 8 U.S.C. § 1252(b)(1) (requiring a petition for review to be filed no later than thirty days after the date of the order to be challenged). We therefore may review no more than that denial. See Kaur v. BIA, 413 F.3d 232, 233 (2d Cir. 2005) (per curiam) (noting that we are precluded from reviewing the underlying merits of an asylum claim on a motion to reopen).

It is undisputed that both the time and numerical bars pertaining to motions to reopen apply here. See 8 U.S.C. § 1229a(c)(7)(A), (C); 8 C.F.R. § 1003.2(c)(2).[3] Zheng argues,

---

[3] The applicable portion of section 1229a provides:
(7) Motions to reopen.
> (A) In general. An alien may file one motion to reopen proceedings under this section . . . .

> . . . .

> (C) Deadline.

>> (i) In general. Except as provided in this subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal.

>> (ii) Asylum. There is no time limit on the filing of a motion to reopen if the basis of the motion is to apply for relief under sections 208 or 241(b)(3) [8 USCS §§ 1158 or 1251(b)(3)] and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not

-6-

however, that he has demonstrated the existence of materially changed conditions in China affecting the possibility of his persecution there should he be forced to return, which would satisfy one of four possible exceptions to those limitations. See 8 C.F.R. § 1003.2(c)(3)(ii) ("[T]ime and numerical limitations . . . shall not apply to a motion to reopen proceedings . . . based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing.").

"A motion to reopen proceedings [must] state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 1003.2(c)(1). Such a motion "[may] not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." Id.

"We review the decision to deny a motion to reopen removal proceedings for abuse of discretion." Bhanot v. Chertoff, 474 F.3d 71, 73 (2d Cir. 2007) (per curiam). The BIA abuses its discretion if its decision "provides no rational

have been discovered or presented at the previous proceeding.

8 U.S.C. § 1229a(c)(7)(A), (C).

-7-

explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements."  Alrefae v. Chertoff, 471 F.3d 353, 357 (2d Cir. 2006) (internal quotation marks and citation omitted).

II.  The Notice

The propriety of the BIA's decision to deny Zheng's second motion to reopen depends on its conclusion that Zheng had not established a change in country conditions, which in turn was based in part on the BIA's refusal to credit the Notice.  The BIA noted that the Notice lacked authentication, which, "in light of the [IJ's] adverse credibility finding," prompted the BIA to reject the document's authenticity.  Citing no authority, Zheng argues that "the Board committed a legal error in giving no weight to the merit of the evidence[,] instead focusing on the admissibility of the evidence."  Pet. Br. at 7.

We conclude that the BIA, in relying on the adverse credibility determination made by the IJ following Zheng's asylum hearing, reasonably rejected the authenticity of the Notice.  In Siewe v. Gonzales, 480 F.3d 160 (2d Cir. 2007), we found that the doctrine of falsus in uno, falsus in omnibus supported a general adverse credibility finding based on a determination that the petitioner had submitted a fraudulent document.  Id. at 170.  In reaching that conclusion, we noted that "a single false document or a single instance of false testimony may (if attributable to the petitioner) infect the balance of the alien's uncorroborated

-8-

or unauthenticated evidence." Id. Similarly, in Borovikova v. U.S. Dep't of Justice, 435 F.3d 151 (2d Cir. 2006), we decided that the conclusion that a document was fraudulent supported a general finding of adverse credibility sufficient to reject an asylum application. Id. at 157-58. The BIA's use here of the IJ's unchallenged conclusion that Zheng was not credible in support of its refusal to credit the authenticity of the Notice was similarly appropriate.

The BIA's decision to reject the Notice was further buttressed by the inconsistencies between it and the "new country reports" that Zheng submitted in an attempt to demonstrate that country conditions had changed adversely and materially. The 2004 Department of State report on China submitted by Zheng states:

> The Chinese Government accepts the repatriation of citizens who have entered other countries or territories illegally. In the past several years, hundreds of Chinese illegal immigrants have been returned from the United States, and U.S. Embassy officials have been in contact with scores of them. In most cases, returnees are detained long enough for relatives to arrange their travel home. Fines are rare. U.S. officials in China have not confirmed any cases of abuse of persons returned to China from the United States for illegal entry. Persons identified as organizers or enforcers of illegal migrant trafficking are liable to face criminal prosecution in China.

China: Profile of Asylum Claims and Country Conditions, U.S. Department of State, Bureau of Democracy, Human Rights and Labor,

at 33 (June 2004).[4]  Although the BIA is required to consider an applicant's countervailing evidence in addition to State Department reports, see Cao He Lin v. U.S. Dep't of Justice, 428 F.3d 391, 403 (2d Cir. 2005), the BIA does not abuse its discretion in crediting the State Department reports in the face of uncorroborated anecdotal evidence to the contrary, Wei Guang Wang v. BIA, 437 F.3d 270, 274-76 (2d Cir. 2006); see also Mu Xiang Lin v. U.S. Dep't of Justice, 432 F.3d 156, 159-60 (2d Cir. 2005).  Apart from the Notice, we have found no evidence in the record indicating that Zheng's act of leaving China to seek asylum in the United States without permission from Chinese authorities would, without more, result in Zheng's persecution.

Although Zheng does not mention the case, his argument raises a question akin to one of those we examined in Cao He Lin. There, we addressed the denial by an immigration judge of an application for asylum and concluded that the IJ errs if he or she rejects a document supporting the application solely because

---

[4]  The petitioner also submitted a September 1999 report from the Immigration and Refugee Board of Canada, which examines the treatment of illegal emigrants who return to Fujian province. Although the BIA properly disregarded this submission because it was available to the petitioner at the time of his original asylum application, the report focuses on the illegal activities of immigrant smugglers, known as "snakeheads," not the emigrants themselves.  The lone discussion of the role of the Chinese government centers on its response to the snakeheads' activities, and its attempt to crackdown on the improper treatment of Chinese returnees by the snakeheads.  The provisions of Chinese law cited in the document focus primarily on those who facilitate the illegal exit from and entry into the country, and on any citizens who obtain immigration documents through illegal means.

it was not properly authenticated under the BIA's regulations.[5] See Cao He Lin, 428 F.3d at 405.  We reasoned that "[b]ecause asylum applicants can not always reasonably be expected to have an authenticated document from an alleged persecutor," id., 428 F.3d at 404 (internal citation and quotation marks omitted), the BIA's authentication regulation "is not the exclusive means of authenticating records before an immigration judge," id.; accord Xue Deng Jiang v. Gonzales, 474 F.3d 25, 29 (1st Cir. 2007) (noting that the IJ commits error when it "reject[s] . . . documents solely because they were not authenticated in strict conformity with the regulation"); Yong Ting Yan v. Gonzales, 438 F.3d 1249, 1256 n.7 (10th Cir. 2006) ("[C]ourts generally do not view the alien's failure to obtain authentication as requiring the rejection of a document." (citing Cao He Lin, 428 F.3d at 404)); see also Khan v. INS, 237 F.3d 1143, 1144 (9th Cir. 2001) (noting that "[t]he procedure specified in 8 C.F.R. § 287.6 provides one, but not the exclusive, method" of authentication (internal quotation marks and citation omitted)).

As we have discussed, however, the BIA's refusal to credit the Notice in this case did not depend on the lack of official authentication consonant with BIA regulations alone. The BIA's rejection of the Notice's authenticity was based

_____

[5] Regulations governing authentication of official records and public documents in BIA proceedings include the requirement, generally, that specified foreign documents must be authenticated, either as official documents or as an attested copy authorized by both foreign-country officials and the United States Foreign Service.  8 C.F.R. § 287.6.

substantially on legitimate concerns about Zheng's credibility and contrary evidence in the record. That removes this case from the teaching of <u>Cao He Lin</u>.[6]

We do not reach the question of whether the BIA might err if it required strict compliance with 8 C.F.R. § 287.6 for foreign documents submitted in support of motions to reopen. We recognize that it may not be possible for an applicant filing a motion to reopen to obtain from a foreign government valid and proper authentication of a document such as the Notice, which purports to threaten persecution of an individual seeking asylum elsewhere, even if the evidence supporting its authenticity were

---

[6] We note further that the context of the immigration proceeding was crucially different in <u>Cao He Lin</u>, which addressed a petition for review of the denial of an asylum application. An applicant for asylum may meet his burden of proof based entirely on his testimony alone; corroborating documents are not required. <u>See</u> 8 C.F.R. § 1208.13(a) ("The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration."). Corroborating evidence is required in an asylum proceeding only "where it would reasonably be expected." <u>Diallo v. INS</u>, 232 F.3d 279, 285 (2d Cir. 2000). A motion to reopen based on changed country conditions, by contrast, depends solely on a showing of previously unavailable, material documentary evidence in support of the underlying proceeding. The Board may consider only the documents submitted to establish that conditions have indeed changed critically since the applicant's departure from his home country. The concerns motivating the <u>Cao He Lin</u> panel are largely absent. The petitioner need not have -- indeed could not have -- brought the required documents with him given the requirement that the evidence must have been previously unavailable, <u>see</u> <u>Wei Guang Wang</u>, 437 F.3d at 274 (concluding that evidence obtained before the petitioner left China could not support the BIA's grant of a motion to reopen because such proof could not amount to "evidence that 'is material and was not available and could not have been discovered or presented at the previous hearing'" (quoting 8 C.F.R. § 1003.2(c)(3)(ii)), but the petitioner nevertheless must present credible, documentary evidence in order for the BIA to grant the motion.

-12-

credible.[7]  We decide only that, in this case, the BIA did not abuse its discretion in declining to consider a document -- questionable on its face, supported only by a spouse's affidavit,[8] and not authenticated pursuant to regulation -- that attempts to establish the sweeping proposition that subsequent to the date of the petitioner's entry into the country and application for asylum, country conditions had undergone a material adverse change sufficient to affect his petition for asylum.

B.  Other Evidence

The petitioner's other evidence, and arguments in support thereof, are also unavailing.  The BIA acted within its discretion in determining that many of the documents submitted to it were previously available and that the country reports alone did not demonstrate changed country conditions.  Zheng failed to

---

[7]  Conversely, we have found that a foreign government's statement that a document is not authentic may be of limited probative value.  In Zhen Nan Lin v. U.S. Dep't of Justice, 459 F.3d 255, 269-70 (2d Cir. 2006) (finding unreliable a United States Consular Report that relied entirely "on the opinions of Chinese government officials who appear to have powerful incentives to be less than candid on the subject of their government's persecution of political dissidents" because "[w]here . . . the document at issue, if authentic, is evidence that a foreign government violated human rights, that government's 'opinion' as to the document's authenticity is obviously suspect and therefore of questionable probative value").

[8]  To the extent that the wife's affidavit was submitted in an effort to authenticate the Notice -- which is not clear from the text of the affidavit, as it does not mention the Notice -- it fails to do so.  In addition to the fact that it includes no mention of the Notice, such as how, when, and where the wife received it, the affidavit merely reiterates the underlying asylum arguments and the substance of the Notice.

explain why any of the documents, which were dated from September 1999 to February 2004, could not have been submitted earlier.

## CONCLUSION

The BIA did not abuse its discretion in denying the motion to reopen.  The petition is denied.  Our review having been completed, the petitioner's request for a stay of removal is also denied.