NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0503n.06

Case No. 18-3694

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Oct 03, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LYUBOV SLYUSAR, DENYS SLYUSAR, and VLADYSLAV SLYUSAR, | ) ) ) | |
| Petitioners, | ) ) | ON PETITION FOR REVIEW FROM THE UNITED STATES |
| v. | ) ) | BOARD OF IMMIGRATION APPEALS |
| WILLIAM P. BARR, Attorney General, | ) ) | |
| Respondent. | ) | **O P I N I O N** |

**BEFORE: MOORE, McKEAGUE, and GRIFFIN, Circuit Judges.**

**McKEAGUE, Circuit Judge.** Lyubov Slyusar and her two sons petition for review of the Board of Immigration Appeals' denial of Slyusar's motion to reopen immigration proceedings. We **DISMISS** the petition in part on jurisdictional grounds and otherwise **DENY** it.

**I.**

This is not Slyusar's first appeal. Slyusar, a Ukrainian citizen and Russian native, previously sought review of the Board's 2012 decision upholding an immigration judge's "denial of her applications for asylum, withholding of removal, and protection pursuant to the Convention Against Torture." *Slyusar v. Holder*, 740 F.3d 1068, 1070 (6th Cir. 2014). Slyusar contended that relief was warranted because Ukraine persecuted her for exposing government officials' pension fraud in Shepetovka, her hometown, through a radio broadcast. *See id.* at 1070–72. But the

immigration judge did not find Slyusar credible. *Id.* at 1072. Specifically, the immigration judge "found numerous inconsistencies between Slyusar's testimony and the information she had previously given to the Department of Homeland [S]ecurity—including discrepant information regarding her employment history, her date of entry into the United States, whether or not she had a [Ukrainian] passport in her possession when she arrived in the United States, her marriages, and her attempts to file asylum claims." *Id.* at 1073. We denied Slyusar's petition for review because she failed to present evidence compelling a contrary credibility finding. *See id.* But we also cautioned that immigration judges, who may base a petitioner's credibility on inconsistencies "unrelated to the claim itself," should exercise "due care in evaluating such inconsistencies when reaching a credibility determination." *Id.* at 1075. Some inconsistencies matter, while others may not. *See id.*

In December 2017, over three years after our decision, Slyusar moved to reopen proceedings. She argued that new conditions in Ukraine stemming from a Russian invasion, a new threat conveyed to her father Anatoliy, ineffective assistance from her lawyers, and our prior decision cautioning immigration judges all justified reopening. In support, Slyusar submitted new evidence: affidavits from herself and her son, statements and pictures detailing the new threat, an expert report about changed conditions in Ukraine, a psychologist's report finding Slyusar credible, and bar complaints Slyusar filed in November 2017 against her prior attorneys.

The Board denied Slyusar's motion to reopen. The Board explained that the motion was untimely, save Slyusar's argument about changed conditions in Ukraine. Equitable tolling of the filing deadline was not warranted, in the Board's view, because Slyusar failed to demonstrate due diligence in pursuing her rights. Slyusar's allegations of ineffective assistance of counsel predated the Board's 2012 decision, and she presented no evidence of due diligence since then.

The Board also found Slyusar fell short of demonstrating prima facie eligibility for relief based on changed country conditions. The Board discredited her father's statement on the ground that it recounts events "already found to be not credible"—that is, Slyusar's story of government retaliation for unearthing corruption. The Board held in the alternative that, assuming the statement is true, it reflects "isolated incidents of verbal harassment or intimidation" not rising to the level of persecution or torture. Additionally, Slyusar raised only a "generalized fear of violence based on recent tensions between Russians and Ukrainians" insufficient to show persecution. Finally, the Board declined to reopen proceedings *sua sponte* because it did not consider the circumstances of Slyusar's case exceptional.

## II.

Slyusar timely petitioned for review, arguing that the Board erred in declining to reopen proceedings *sua sponte*, failing to credit and consider her evidence of changed conditions in Ukraine, and refusing to equitably toll the 90-day filing deadline. Because the Board "retains broad discretion to grant or deny" motions to reopen, we review the Board's decision for abuse of discretion. *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007). The Board "abuses its discretion when it acts arbitrarily, irrationally or contrary to law." *Sswajje v. Ashcroft*, 350 F.3d 528, 532 (6th Cir. 2003).

Motions to reopen must "be filed within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C § 1229a(c)(7)(C)(i); *see* 8 C.F.R. § 1003.2(c)(2). This filing deadline, which Slyusar admittedly missed, has only a few narrow exceptions. *Barry v. Mukasey*, 524 F.3d 721, 723 (6th Cir. 2008). Relevant here are two exceptions: (1) when the Board decides to reopen proceedings *sua sponte*; and (2) when "new, material evidence that could not have been discovered or presented at the time of the original proceeding" demonstrates "changed

circumstances in the country of nationality." *Id.* (quoting *Qeraxhiu v. Gonzales*, 206 F. App'x 476, 480 (6th Cir. 2006)); *see* 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(a), (c)(3). Equitable tolling is effectively a third exception, but applies only where a diligent petitioner could not timely file a motion to reopen due to circumstances out of her control. *See id.* at 724–25.

**A.**

As for the first exception, we lack jurisdiction to review the Board's "determination to forgo the exercise of its *sua sponte* authority." *Barry*, 524 F.3d at 724; *see Harchenko v. I.N.S.*, 379 F.3d 405, 410–11 (6th Cir. 2004); *see also Lisboa v. Holder*, 570 F. App'x 468, 472 (6th Cir. 2014) (noting *Barry* and *Harchenko* remain binding precedent). So to the extent Slyusar argues the Board should have reopened proceedings *sua sponte*, even on due process grounds, we dismiss the petition for lack of jurisdiction. *See Rais v. Holder*, 768 F.3d 453, 464 (6th Cir. 2014).

**B.**

That brings us to the second exception, changed country conditions. To take advantage of this exception, a petitioner must show both changed country conditions (using new, material evidence) and prima facie eligibility for relief. *See Maldonado-Torres v. Holder*, 573 F. App'x 474, 476 (6th Cir. 2014). A petitioner can make a prima facie case by showing to a "reasonable likelihood" that, among other things, she has a "well-founded fear of persecution" based on her protected status upon removal to her home country. *Trujillo Diaz v. Sessions*, 880 F.3d 244, 249–50 (6th Cir. 2018) (quoting 8 U.S.C. §§ 1101(a)(42)).

First, we note that Slyusar never explains in her opening brief how she is prima facie eligible for relief based on changed conditions in Ukraine. She simply incorporates her "pleadings before the Board" by reference. We don't allow argument by reference to the briefing below.

*Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452–53 (6th Cir. 2003). So Slyusar has forfeited her arguments on this important but not dispositive score. *See id.*

Instead, Slyusar argues the Board abused its discretion by discrediting her father Anatoliy's statement and failing to address corroborative evidence. According to Anatoliy, he received a threatening call on September 6, 2017 from "an unknown man who demanded . . . that [Slyusar] remove information from the Internet about corruption in [Shepetovka.]" A.R. at 212. That is, the man demanded Slyusar remove from the internet our prior decision in this case, *Slyusar v. Holder*, 740 F.3d 1068 (6th Cir. 2014). *See id.* at 184. Ten days later, "two unfamiliar men" sent by Slyusar's former employer vandalized Anatoliy's front door with paint. *Id.* at 212. The men made the same demand, explaining that the police were on their side and adding that Slyusar must "write a refutation about everything and upload[] it to the Internet." *Id.* Otherwise, the men would "tear out [Slyusar's] lying tongue and tie her hands in a knot." *Id.* All this reminded Anatoliy of "everything that happened to [Slyusar] before she left Ukraine"—her arrest, imprisonment, and torture. *Id.* Anatoliy claims he suffered "discirculatory encephalopathy" from the experience. *Id.* at 213, 232.

To start, we reject Slyusar's suggestion that under *Trujillo Diaz* the Board had to address all her evidence, not just Anatoliy's statement. While the Board may not silently discredit a reasonably specific affidavit, *Trujillo Diaz*, 880 F.3d at 253, it need not "mention every piece of evidence before it or every logical element of a motion." *Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008). Slyusar's other submissions were derivative or uncorroborative of Anatoliy's statement: supporting affidavits merely recite what Anatoliy told Slyusar; a statement from Anatoliy's neighbor, Anatoliy's medical records, a receipt for a new door, and an expert report about worsening corruption in Ukraine say nothing of who threatened Anatoliy or why. The

Board, therefore, "owed no duty to rehearse the rest of [the] evidence for sake of completeness." *Id.* at 855. Assuming Slyusar established changed conditions in Ukraine, Anatoliy's statement was the key to showing a well-founded fear of future persecution. And in discrediting Anatoliy's statement, the Board "analyze[d] and explain[ed] the basis on which it decided against" Slyusar, albeit cursorily. *Id.* at 854.

But we can't say the Board abused its discretion in discrediting Anatoliy's statement. As the Board noted, the statement recounts as true Slyusar's arrest, imprisonment, and torture—the events which an immigration judge found incredible. The Board upheld that adverse credibility finding, reasoning that Slyusar's inconsistent testimony "call[ed] into question the veracity of [her] story." A.R. at 559. We upheld the Board. *Slyusar*, 740 F.3d at 1073. Under these circumstances, the Board was entitled to find Anatoliy's statement, including his claims about who vandalized his door and why, "inherently unbelievable." *Trujillo Diaz*, 880 F.3d at 253 (quotation omitted). Weaving the possible in with the incredible in a single narrative is just the sort of defect which allows the Board to disbelieve evidence. *See id.* ("internal inconsistency" permits the Board to discredit an affidavit); *cf. Arias-Hernandez v. Sessions*, 685 F. App'x 372, 378 (6th Cir. 2017) (applying the maxim "false in one, false in all" in upholding the Board's decision to discredit affidavits).[1]

Slyusar responds that she was not actually found incredible in her prior asylum claim. The adverse credibility finding "had nothing to do with the asylum case on its merits, but rather [with] ancillary issues." Thus, the argument goes, her father's statement should be accepted as true. But

---

[1] The Ninth Circuit has held the Board may not apply the maxim "false in one, false in all" to find evidence supporting a motion to reopen "inherently unbelievable." *Yang v. Lynch*, 822 F.3d 504, 508–09 (9th Cir. 2016) (arguing the maxim cannot apply because it is "discretionary rather than mandatory"). We note the Board in that case discredited a petitioner's affidavit solely because of a prior adverse credibility determination, not because the affidavit was internally inconsistent or recounted events found incredible as true. *See id.* at 507. Regardless, we, along with the Second Circuit, take a broader view of inherent unbelievability. *Trujillo Diaz*, 880 F.3d at 253; *Zheng v. Gonzales*, 500 F.3d 143, 147 (2d Cir. 2007).

Slyusar wasn't found incredible solely because of immaterial inconsistencies as she suggests. The immigration judge also found her story incredible because she never mentioned anything about completing a bachelor's degree program while the government persecuted her for exposing corruption at the pension office she worked at. A.R. at 705. Nor did Slyusar consistently explain fleeing Shepetovka to live in hiding with her grandmother-in-law—all the while finishing her degree. *Id.* These are hardly "ancillary issues." They go to the heart of Slyusar's story. *See Masiko v. Holder*, 562 F. App'x 469, 473 (6th Cir. 2014) (discrepancies about "what happened and where it took place" are central to a petitioner's claim). Moreover, Slyusar overlooks that we previously held there were "enough inconsistencies in her testimony and documents" to support the immigration judge's credibility determination even if the judge erred in not allowing her to submit more evidence. *Slyusar*, 740 F.3d at 1073.

Slyusar has not rehabilitated her credibility, either. *See Zhang*, 543 F.3d at 855. While a psychologist concluded Slyusar has "[m]emory problems" and her "reported experiences . . . appear genuine," the psychologist's report and Slyusar's affidavit aren't enough. Both documents are silent as to the bachelor's program, fleeing Shepetovka, and other inconsistencies the immigration judge found suspect. Assuming Slyusar can even relitigate her credibility at this late stage, with previously available evidence no less, she "has not presented evidence that would compel a reasonable adjudicator to disagree with the" immigration judge's adverse credibility finding. *Slyusar*, 740 F.3d at 1073.

Our dissenting colleague emphasizes that only Slyusar was found incredible, not her story, Anatoliy, or Anatoliy's new claims. We don't find this distinction meaningful. In *Zhang*, we upheld the Board's decision to discredit an uncorroborated letter from the petitioner's best friend because *the petitioner* was not credible. 543 F.3d at 855. The petitioner also failed to rehabilitate

her credibility, which was diminished in part by her prior submission of what an immigration judge found to be fraudulent documents. *Id.* at 852, 855. And in *Vakeesan v. Holder*, we held the Board was within its discretion to deny reopening where "the factual predicate" of the petitioner's motion to reopen was "not independent of the testimony" already found unbelievable by an immigration judge. 343 F. App'x 117, 125 (6th Cir. 2009) (citing *Gebreeyesus v. Gonzales*, 482 F.3d 952, 955 (7th Cir. 2007)); *accord Rasiah v. Holder*, 589 F.3d 1, 6 (1st Cir. 2009); *Paul v. Gonzales*, 444 F.3d 148, 154 (2d Cir. 2006); *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004) (in denying a motion to reopen, the Board cannot rely on an adverse credibility determination "utterly unrelated" to a petitioner's new claims). Neither *Zhang* nor *Vakeesan* turns on the distinction between people and stories; they instead turn on a petitioner's credibility. *See Zhang*, 543 F.3d at 855; *Vakeesan*, 343 F. App'x at 125–26. We have even equated a petitioner's credibility with his story's. *See Ahmed v. Holder*, 495 F. App'x 605, 612 (6th Cir. 2012); *Vakeesan*, 343 F. App'x at 125–26. Whether the dissent quotes these cases with selective emphasis or not, the point stands: the petitioner's credibility is king, particularly where a key witness relies on the petitioner's version of events.

More to the point, here, Slyusar has not rehabilitated her credibility, yet she depends on her prior incredible testimony. Anatoliy's statement intertwines the new with the old. He not only references Slyusar's prior allegations of persecution but also claims Slyusar's *former employer* is the one now dispatching thugs. A.R. at 403. The immigration judge, however, doubted Slyusar worked where she claimed she did. *Id.* at 705–06. Exclude the incredible from Anatoliy's statement, and the record is devoid of any evidence of future persecution. *Vakeesan*, 343 F. App'x at 126 ("Absent the accounts of past persecution, the record is devoid of any evidence to suggest that Vakeesan faces a reasonable possibility of being singled out individually for persecution if

deported to Sri Lanka."). The Board might have forgiven this inconsistency between new and old, possible and incredible. That it didn't is not an abuse of discretion.

### C.

Last is equitable tolling. The Board can consider a late motion to reopen on its merits by equitably tolling the 90-day filing deadline. *Barry*, 524 F.3d at 724. "Equitable tolling may apply when a petitioner has received ineffective assistance of counsel." *Ljucovic v. Gonzales*, 144 F. App'x 500, 503 (6th Cir. 2005). But we still require a petitioner to show that she acted with "due diligence in pursuing her rights." *Barry*, 524 F.3d at 724–25 (collecting cases). Specifically, a petitioner must "prove that the delay in filing the motion to reopen was due to an exceptional circumstance" outside her control. *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 423 (6th Cir. 2007) (quotation omitted).

Slyusar argues the Board abused its discretion in finding she didn't exercise due diligence. In her view, the evidence shows she received ineffective assistance of counsel throughout proceedings, was suffering from "severe psychological conditions" that prevented her from pursuing her rights, and did not retain competent counsel until 2017. The Board's failure to even mention this evidence warrants reversal, she suggests.

The Board didn't abuse its discretion. Again, the Board is not obligated to mention evidence by name in its decision, so long as it "analyze[d] and explain[ed] the basis on which it decided against" the petitioner. *Zhang*, 543 F.3d at 854. The Board did so here. It stated the correct standard for applying equitable tolling, then explained Slyusar wasn't diligent because whatever ineffective assistance of counsel she suffered ended by 2012, and she didn't show that her delay in moving to reopen since then was out of her control.

And that explanation holds up. True, a psychologist concluded Slyusar suffers from "[m]emory problems" and "persistent avoidance of stimuli associated with [her] trauma." The inference that Slyusar wants us to draw from this, though—that her condition *precluded* diligence—is pure speculation. The psychologist never connected Slyusar's condition with her failing, for over three years, to engage new counsel or otherwise pursue her rights. Nor does Slyusar explain that failure in her affidavit. While she describes the ineffective assistance she received through 2014, she doesn't explain her inactivity between 2014 and 2017. Instead, she indicates she knew about her attorneys' missteps since 2014 but was unaware she had to file bar complaints. By not acting on what she *did* know, however, Slyusar failed to exercise due diligence. *See Tapia-Martinez*, 482 F.3d at 424 ("Petitioner failed to exercise due diligence because she did not file a motion alleging ineffective assistance [of counsel] until fifteen months after she discovered [counsel's] deficient performance."); *see also Barry*, 524 F.3d at 725 (collecting cases); *cf. Iturribarria v. I.N.S.*, 321 F.3d 889, 899 (9th Cir. 2003) (petitioner exercised due diligence by filing motion to reopen one month after discovering his prior attorney's misdeed). The Board did not, therefore, abuse its discretion in declining to equitably toll the reopening deadline.[2]

### III.

In sum, the Board did not abuse its discretion in denying Slyusar's motion to reopen. We **DISMISS** the petition for review in part and **DENY** it in part. The stay of removal previously entered is **VACATED**.

---

[2] Slyusar also argues the Board abused its discretion by allowing the government to respond to her motion to reopen five months late. We disagree. The Board can, "in its discretion," consider an untimely brief. 8 C.F.R. § 1003.2(g)(3). Slyusar cites no authority for her suggestion that the Board's discretionary consideration of the government's untimely brief shows favoritism. (It doesn't, by the way. *See Liteky v. United States*, 510 U.S. 540, 555 (1994).) Moreover, even if the Board should have disregarded the government's brief and deemed Slyusar's motion unopposed, that wouldn't mandate "an automatic grant of the motion." *Khakhnelidze v. Holder*, 432 F. App'x 564, 575 (6th Cir. 2011). The Board "retains the discretion to deny relief even when no responsive brief is filed." *Id.*

**KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part.**

In her motion to reopen based on changed country conditions, Slyusar presented an account of events post-dating her last appeal, by a new witness. She also provided an expert affidavit describing worsening violence and corruption by police and public officials in Ukraine—the very people she claims abused her and continue to threaten her life. The majority concludes that the Board of Immigration Appeals ("BIA") did not abuse its discretion when it dismissed her new evidence and denied her motion. For the reasons that follow, I dissent with respect to the majority's holding on changed country conditions.

In her initial removal proceedings, Slyusar testified that she had been working for a nonprofit organization assisting pensioners in Shepetovka, Ukraine when she discovered a pension fraud implicating local government officials. *Slyusar v. Holder*, 740 F.3d 1068, 1070 (6th Cir. 2014). After she exposed the fraud, she reportedly received death threats and was picked up, detained, and abused by the police. *Id*. at 1070–71. The Immigration Judge ("IJ") found that Slyusar was not credible based on the "numerous inconsistencies" in her testimony and denied relief, and the BIA upheld that decision. *Id*. at 1072–73. Specifically, the IJ noted "discrepant information regarding her employment history, her date of entry into the United States, whether or not she had a Ukrainian passport in her possession when she arrived in the United States, her marriages, and her attempts to file asylum claims." *Id*. at 1073. Acknowledging that "under the REAL ID Act, even ancillary inconsistencies in a petitioner's testimony support adverse credibility determinations," we upheld the IJ and BIA's decisions because, "while another IJ might have ruled differently, . . . no evidence has been presented that compels a different ruling." *Id*.

In 2017, Slyusar moved to reopen her proceedings based on a change in country conditions. *See* A.R. at 151. She asserts that the officials she exposed in Shepetovka found our decision in

*Slyusar* online and have demanded that she post a refutation of her account. *See* Pet. Br. at 21–29; A.R. at 212. She claims that two men threatened her father, Anatoliy, over the phone on two separate occasions, demanding that she take the *Slyusar* decision off the Internet. A.R. at 212. About a week later, the men came to Anatoliy's house, painted his door with the word "bitch," and told him they would find Slyusar, "tear out her lying tongue and tie her hands in a knot" if she did not recant. *See* Pet. Br. at 21–29; A.R. at 212, 234. The men said they were sent by the former head of the department of social protection of the Shepetovka district, whose work involved pensions. *See* A.R. at 212. Additionally, beyond her personal circumstances, Slyusar asserts that corruption and violence by state institutions in Ukraine have worsened more generally. Pet. Br. at 23–25.

In support of her motion to reopen, Slyusar submitted, among other things, an affidavit by her father describing the threats, documentary evidence corroborating his account, and an expert affidavit on country conditions in Ukraine. A.R. at 172–74. The BIA denied her motion, affording her father's affidavit "minimal weight," as it "recounts events . . . already found to be not credible." *Id*. at 5. Moreover, even if it were credible, his affidavit was "insufficient to make a prima facie showing" of the requisite potential harm because his claims that "government officials vandalized his front door and verbally threatened" Slyusar merely amount to "'isolated incidents of verbal harassment or intimidation, unaccompanied by any physical'" harm. *Id*. (quoting *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 390 (6th Cir. 1998)). The BIA did not discuss the remaining evidence. *See id*.

Unless the BIA finds the evidence "inherently unbelievable," it "must accept as true reasonably specific facts proffered by an alien in support of a motion to reopen." *See Trujillo Diaz v. Sessions*, 880 F.3d 244, 252 (6th Cir. 2018) (quotation omitted). Here, rather than take

Anatoliy's account of events as true, the BIA afforded it "minimal weight." A.R. at 5. It did so on the basis that his account was merely a new chapter in an already-discredited story. *See id.* But adverse credibility findings do not apply to stories—they apply to the people that tell them. *See* 8 U.S.C. § 1158(b)(1)(B)(ii) ("The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible . . . ."); *Niyibizi v. Mukasey*, 300 F. App'x 371, 376 (6th Cir. 2008) (concluding the BIA abused its discretion when it applied the applicant's adverse credibility finding to reject accounts from other witnesses). Neither the IJ nor the BIA had previously received an affidavit or testimony by Anatoliy, and his account sets out entirely new events post-dating Slyusar's prior appeal. *See* A.R. at 559, 681–94. The BIA therefore erred by applying Slyusar's adverse credibility finding to Anatoliy's affidavit.[1] It also mischaracterized Anatoliy's account as an isolated event, when in fact he details two threatening phone calls that culminated in the visit where they vandalized his door. *See id.* at 212; *Shabo v. Sessions*, 892 F.3d 237, 239–40 (6th Cir. 2018) ("Factual errors can qualify as legal errors when 'important facts have been *totally overlooked* and others have been *seriously mischaracterized.*'") (quoting *Ventura-Reyes v.*

---

[1] The majority cites *Zhang v. Mukasey*, 543 F.3d 851 (6th Cir. 2008), and two unpublished decisions for its proposition that past adverse credibility findings sometimes apply to new evidence setting out new events. In *Zhang*, the IJ found the petitioner not credible after determining that her testimony was unreliable and that she had submitted fraudulent documents as evidence. *Id.* at 852. The BIA relied upon that adverse credibility finding in denying her motion to reopen because her argument that she faced an individualized risk of persecution hinged solely on a letter from a friend, presented without corroborating evidence. *Id.* at 853. Because the IJ found "her not credible *and her documents fraudulent*," "we [could not] say the Board abused its discretion in declining to credit a letter from Zhang's best friend *without corroboration.*" *Id.* at 855 (emphasis added). Applying *Zhang*'s limited holding to this case, the BIA abused its discretion here because (1) Slyusar was never found to defraud the court, and (2) in support of her motion to reopen, Slyusar produced evidence corroborating Anatoliy's account. *See, e.g.*, A.R. at 226–27 (photos of vandalized door); *id.* at 228–31 (proof of payment for repairs to door); *id.* at 234 (affidavit from neighbor describing the vandalized door); *id.* at 232 (proof of Anatoliy's hospitalization following the incident). Moreover, the unpublished decisions cited by the majority are, respectively, inapposite, *see Vakeesan v. Holder*, 343 F. App'x 117, 126 (6th Cir. 2009) ("Absent the accounts of *past* persecution, the record is *devoid of any evidence* to suggest that Vakeesan faces a reasonable possibility of being singled out individually for persecution if deported to Sri Lanka.") (emphasis added), and unpersuasive, *see Ahmed v. Holder*, 495 F. App'x 605, 613 (6th Cir. 2012) (mistaking our rationale in *Zhang* for the IJ's basis for its credibility finding).

*Lynch*, 797 F.3d 348, 360 (6th Cir. 2015)). Therefore, the BIA abused its discretion when it denied Slyusar's motion to reopen based on changed country conditions.

The majority states that the BIA was "entitled to find Anatoliy's statement, including his claims about who vandalized his door and why, 'inherently unbelievable.'" Maj. Op. at 6 (quoting *Trujillo Diaz*, 880 F.3d at 253). Though it is true that the BIA is entitled to discredit an affidavit as "inherently unbelievable," it did not do so here. *See Trujillo Diaz*, 880 F.3d at 252–53. The BIA did not "explicitly find" that the affidavit was inherently unbelievable in this appeal, or that the story was inherently unbelievable in the last. *See* A.R. at 5, 559; *Trujillo Diaz*, 880 F.3d at 253. Nor did it "make any findings that would indicate that it reached this conclusion." *See* A.R. at 5, 559; *Trujillo Diaz*, 880 F.3d at 253. In this appeal, the BIA "did not find any internal inconsistencies" in Anatoliy's affidavit, *see Trujillo Diaz*, 880 F.3d at 253—instead it dismissed his statements as incredible because his daughter was previously found to be not credible, *see* A.R. at 5. In the last appeal, the BIA upheld the IJ's adverse credibility determination because the inconsistencies in her testimony, such as her statements regarding her marriages and her date of entry, "call[ed] into question the veracity of the respondent's story." *Id.* at 559. No court has found that the threats, detention, and abuse Slyusar described is itself farfetched or impossible to believe. *See id.* at 5, 681–94; *Slyusar*, 740 F.3d at 1073.

Finally, having discredited Anatoliy's account, the BIA never considered Slyusar's country conditions expert affidavit that, taken as true, demonstrates that corruption and violence in Ukraine are on the rise. *See* A.R. at 133–42; *Zhang v. Holder*, 702 F.3d 878, 879–80 (6th Cir. 2012) ("[A] change in personal circumstances that is unaccompanied by a change in country conditions is insufficient to reopen proceedings."). Since her first appeal in 2012, corrupt politics and "the outbreak of war with Russia in 2014 have compounded an already unstable and dangerous situation

in Ukraine." A.R. at 135. The war, in particular, has "seriously eroded the stability of Ukraine writ large, both in the territorial and the political-economic contexts." *Id*. at 142. According to her expert, and consistent with findings by the Department of State, "the use of the police to intimidate Ms. Slyusar is very much in keeping with official corruption in Ukraine, as the police themselves are highly corrupted and act with impunity in almost all cases." *Id*. at 140, 142. This context potentially lends credibility to Slyusar's new evidence of threats and should be considered in making a prima facie determination of eligibility for relief.

The BIA improperly discredited and mischaracterized Anatoliy's account and failed to address evidence of changed country conditions. For these reasons, I respectfully dissent.