**18-1440-ag**
*Tanusantoso v. Barr*

In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM, 2019

ARGUED: MARCH 31, 2020
DECIDED: JUNE 23, 2020

No. 18-1440-ag

HARMANTO TANUSANTOSO, WIWIK WIDAYATI,
*Petitioners,*

*v.*

WILLIAM P. BARR, United States Attorney General,
*Respondent.*

————

On Petition for Review of a Final Order
of the Board of Immigration Appeals.

————

Before: WALKER, CABRANES and SACK, *Circuit Judges.*


————

Harmanto Tanusantoso and Wiwik Widayati (collectively, Petitioners) petitioned for review after the Board of Immigration Appeals (BIA) denied their third motion to reopen, in which they alleged a change of country conditions for Christians in Indonesia. Petitioners argue that the BIA abused its discretion in

denying their motion to reopen because it (1) failed to address their primary evidence of changed country conditions and (2) incorrectly concluded that their failure to submit a new asylum application with their motion made the motion procedurally deficient under 8 C.F.R. § 1003.2(c)(1). We agree with Petitioners. We find that the BIA's one-and-a-half-page order failed to account for relevant evidence of changed country conditions, and we hold that § 1003.2(c)(1) does not require the submission of a new asylum application for motions such as this one. We therefore GRANT the petition for review, VACATE the BIA's decision, and REMAND for explicit consideration of Petitioners' changed country conditions evidence.

_____

WILLIAM W. CASTILLO GUARDADO (Dan R. Smulian, *on the brief*), Catholic Charities Community Services, New York, NY, *for Petitioners*.

ROBERT DALE TENNYSON, JR., Trial Attorney (Joseph H. Hunt, Assistant Attorney General; Benjamin J. Zeitlin, Trial Attorney; Nancy E. Friedman, Senior Litigation Counsel, *on the brief*), Office of Immigration Litigation, United States Department of Justice, Washington, D.C., *for Respondent*.

_____

JOHN M. WALKER, JR., *Circuit Judge*:

Harmanto Tanusantoso and Wiwik Widayati (collectively, Petitioners) petitioned for review after the Board of Immigration Appeals (BIA) denied their third motion to reopen, in which they alleged a change of country conditions for

Christians in Indonesia. Petitioners argue that the BIA abused its discretion in denying their motion to reopen because it (1) failed to address their primary evidence of changed country conditions and (2) incorrectly concluded that their failure to submit a new asylum application with their motion made the motion procedurally deficient under 8 C.F.R. § 1003.2(c)(1). We agree with Petitioners. We find that the BIA's one-and-a-half-page order failed to account for relevant evidence of changed country conditions and hold that § 1003.2(c)(1) does not require the submission of a new asylum application for motions such as this one. We therefore GRANT the petition for review, VACATE the BIA's decision, and REMAND for explicit consideration of Petitioners' changed country conditions evidence.

## BACKGROUND

Petitioners are Indonesian citizens who adhere to the Catholic religion. In December 1999, Petitioners entered the United States on non-immigrant visas set to expire in March 2000. Petitioners overstayed their visas and, as relevant here, applied for asylum in 2001 based on their Catholic faith and the persecution of Christians in Indonesia. In 2003, an Immigration Judge (IJ) denied Petitioners' asylum application on the bases that it was untimely and failed to meet the burden of proof required for relief. In 2004, the BIA adopted the IJ's decision and affirmed the denial of asylum.

Following that BIA decision, Petitioners filed three motions to reopen based on ineffective assistance of counsel and changed country conditions for Christians in Indonesia. The BIA denied the first of these motions in 2004 and the second in 2009, both times finding that the changes Petitioners alleged did not render the country conditions for Christians in Indonesia materially different from those that

the IJ reviewed in 2003 when she denied their asylum claim.[1]  In 2017, Petitioners filed a third motion to reopen, alleging that country conditions for Christians in Indonesia had substantially deteriorated in recent years and were now materially different.

Together with their third motion to reopen, Petitioners submitted two recent U.S. government reports on the freedom of religion in Indonesia, as well as two articles detailing high-profile instances of Indonesian Christians being persecuted. These materials described the rise to power of hardline "intolerant groups," which compelled "local governments and police . . . to close houses of worship . . . or otherwise restrict the rights of minority religious groups," like Christians.[2]  The reports expressed concern that parts of Indonesia had begun imposing Sharia law on non-Muslims and, for the first time, had even publicly caned a Christian woman for her noncompliance with Sharia rules.  The reports also detailed how Indonesia's enforcement of its once-dormant 1965 anti-blasphemy law had dramatically increased, in part based on its use against Christian politicians.  The reports and articles further suggested that private actors in Indonesia were increasingly hostile toward Christians.  In 2016, the State Department reported that hundreds of thousands of protestors called for the arrest of the first Christian governor of Jakarta after "he told a crowd of voters it was wrong to manipulate

---

[1] *See In re S-Y-G*, 24 I. & N. Dec. 247, 253 (BIA 2007) ("In determining whether evidence accompanying a motion to reopen demonstrates a material change in country conditions that would justify reopening, [the BIA] compare[s] the evidence of country conditions submitted with the motion to those that existed at the time of the merits hearing below.").

[2] Certified Administrative Record (CAR) at 78 (Exhibit E to Petitioners' motion to reopen: the U.S. State Department's 2016 International Religious Freedom Report on Indonesia).

verses from the Quran for political gain."[3]  And in 2017, the U.S. Commission on International Religious Freedom reported that non-Muslims faced increasingly intense "interference with their ability to practice their faith," including "vandalism at existing houses of worship" and "violent protests."[4]

On April 19, 2018, the BIA denied Petitioners' third motion to reopen in a one-and-a-half-page decision that by in large did not address any of the recently reported facts pertaining to changed country conditions.  The BIA simply stated that "the Indonesian government continues to work to promote religious freedom" and that "there has not been a showing of worsening conditions or circumstances."[5]  Although Petitioners had not been asked to file a new asylum application with their previous motions to reopen, the BIA also denied Petitioners' third motion on the basis that they did "not submit[] a new asylum application in support of" the motion.[6]  The BIA cited 8 C.F.R. § 1003.2(c)(1) in support of this supposed filing requirement.  Petitioners challenge the BIA decision in full.

## DISCUSSION

In this petition for review, Petitioners argue that the BIA abused its discretion (1) in finding that Petitioners had not established changed country

---

[3] *Id*. at 87 (Exhibit E to Petitioners' motion to reopen: the U.S. State Department's 2016 International Religious Freedom Report on Indonesia).

[4] *Id*. at 106 (Exhibit F to Petitioners' motion to reopen: the U.S. Commission on International Religious Freedom's 2017 Annual Report).

[5] *Id*. at 4 (BIA decision denying Petitioners' third motion to reopen) (explicitly referencing only the ousted Jakarta governor and otherwise generally referring to Petitioners' "Exhs. A-B, E-F, H").

[6] *Id*.

conditions for Indonesian Christians and (2) in denying their petition on procedural grounds because § 1003.2(c)(1) does not require those who have already filed a pertinent asylum application to resubmit that application with their motion to reopen.[7]  We agree with Petitioners.

### A.    Changed Country Conditions

In general, noncitizens facing deportation may move to reopen removal proceedings only once, within 90 days of their final order of removal.[8]  As an exception, however, noncitizens may file additional motions to reopen beyond this window, provided they allege "changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available" at the time of the previous proceeding.[9]  Because Petitioners' motion to reopen was their third motion and was filed 13 years after the IJ denied their asylum application, Petitioners had to marshal evidence of changed country conditions to support their motion.  Petitioners argue that they established changed country conditions but that the BIA improperly refused to credit their evidence.

When reviewing whether Petitioners' evidence established changed country conditions, the BIA must "compare the evidence of country conditions submitted with the motion to those that existed at the time of the merits hearing below."[10]

---

[7] *See Shao v. Mukasey*, 546 F.3d 138, 168–69 (2d Cir. 2008) (reviewing the BIA's denial of a motion to reopen for abuse of discretion).

[8] 8 U.S.C. §§ 1229a(c)(7)(A), 1229a(c)(7)(C)(i).

[9] *Id.* § 1229a(c)(7)(C)(ii).

[10] *In re S-Y-G-*, 24 I. & N. Dec. at 253.

The BIA has broad discretion in how it conducts this review, but it must "explicitly consider any country conditions evidence submitted by an applicant that materially bears on his claim," particularly when such evidence is submitted together with a motion to reopen.[11] We have previously held that the BIA abuses its discretion when it fails to address material evidence or otherwise "provides no rational explanation" and produces a decision "devoid of any reasoning, or contain[ing] only summary or conclusory statements."[12] We find that the BIA abused its discretion when it denied Petitioners' motion to reopen with a brief decision that failed to mention, and in certain respects directly conflicted with, key evidence submitted by Petitioners.

As outlined above, Petitioners attached to their motion to reopen two recent U.S. government reports and two articles detailing how "intolerant groups" seeking to persecute religious minorities have risen to power in Indonesia; how Indonesian state and local governments have increasingly interfered with the free exercise of religion, particularly for Christians; and how Christian public figures and houses of worship increasingly have been the subject of opprobrium and vandalism by members of the Indonesian public. The BIA's decision did not engage with this information. It did not account for Indonesia's renewed use of its 1965 anti-blasphemy law against Christian politicians or its first-ever imposition of Sharia law on non-Muslims. Nor did the BIA account for the specific findings of the 2017 Annual Report of the U.S. Commission of International

---

[11] *Fong Chen v. Gonzales*, 490 F.3d 180, 182 (2d Cir. 2007) (per curiam).

[12] *Zheng v. Gonzales*, 500 F.3d 143, 146 (2d Cir. 2007) (internal quotation marks omitted).

Religious Freedom, one of the reports submitted by Petitioners.[13]  That report found that "regional government officials often are responsible for either tolerating or directly perpetrating abuses" against minority religious groups and that, "by many accounts, violations of the freedom of religion or belief continue to rise and/or increase in intensity."[14]  To the contrary and without citing evidence, the BIA concluded that "the Indonesian government continues to work to promote religious freedom" and that "there has not been a showing of worsening conditions or circumstances."[15]

Because the BIA failed to specifically address Petitioners' key evidence, we hold that it abused its discretion by denying Petitioners' motion.  While the BIA "need not 'expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner,'" it still must address a petitioner's primary evidence, particularly when that evidence is credible and points toward a conclusion contrary to that reached by the BIA.[16]  Here, it was incumbent on the BIA to acknowledge Petitioners' material evidence and to explain why its view of the facts departed from that of the experts who produced the 2017 U.S. Commission Report.  In the absence of such acknowledgement and explanation,

---

[13] *See Tian-Yong Chen v. U.S. INS*, 359 F.3d 121, 130 (2d Cir. 2004) (recognizing that government reports "are usually the result of estimable expertise and earnestness of purpose, and they often provide a useful and informative overview of conditions").

[14] CAR at 106, 108 (Exhibit F to Petitioners' motion to reopen: the U.S. Commission on International Religious Freedom's 2017 Annual Report).

[15] *Id*. at 4.

[16] *Gao v. Mukasey*, 508 F.3d 86, 87 (2d Cir. 2007) (per curiam) (citing *Wang v. Bd. of Immigration Appeals*, 437 F.3d 270, 275 (2d Cir. 2006)).

the BIA's decision can only be characterized as predicated on "summary or conclusory statements."[17]

In finding that the BIA abused its discretion by failing to address recent evidence of changed country conditions for Christians in Indonesia, we do not write on a blank slate. Addressing a virtually-identical BIA decision that concerned the same changed country conditions for Christians in Indonesia, the Third Circuit held:

> By failing to address [the petitioner's evidence of changed country conditions in Indonesia]—let alone merely acknowledge them—the BIA contravened our mandate that it show that it considered the entire evidentiary record . . . and clearly did not fulfill its heightened duty to consider any country conditions evidence submitted by [the petitioner] that materially bears on his claim.[18]

While acknowledging that "the BIA was not required to cite every exhibit provided" by the petitioner, the Third Circuit nevertheless concluded that, "given the strength of the abovementioned evidence in favor of [the petitioner's] position, [the BIA] was required to meaningfully account for it in some way."[19] Similarly, in *Sihotang v. Sessions*, the First Circuit found that the BIA "gave [an Indonesian

---

[17] *Zheng*, 500 F.3d at 146.

[18] *Liem v. Att'y Gen. U.S.*, 921 F.3d 388, 399–400 (3d Cir. 2019) (internal quotation marks and citations omitted).

[19] *Id*. at 400.

Christian] petitioner short shrift" by concluding "[i]n a terse one-and-a-half page opinion" that conditions in Indonesia "show only a continuation of previously existing conditions."[20] The First Circuit held "that the BIA abused its discretion in neglecting to consider significant facts" and remanded "so that the BIA may determine, upon due consideration of all the relevant evidence, whether the petitioner has shown a material change in country conditions."[21] Recently, the Eleventh Circuit joined the First and Third Circuits, finding that a BIA decision denying an Indonesian Christian's motion to reopen "failed to address a single piece of [the petitioner's] evidence documenting the escalation of violence and increased persecuting—including by government officials—of Christians" and therefore required vacatur and remand.[22] Our opinion aligns with those of our sister circuits.

Although we find that the BIA abused its discretion in its conclusory treatment of Petitioners' claims, we, like our sister circuits, take no position on whether Petitioners have actually established changed country conditions. We simply hold that the BIA could not deny Petitioners' motion without explicitly addressing their primary evidence. On remand, the BIA must give full consideration to Petitioners' evidence, as well as any countervailing evidence, before deciding whether to grant or deny their motion.

---

[20] 900 F.3d 46, 49 (1st Cir. 2018) (internal quotation marks omitted).

[21] *Id*. at 53.

[22] *Krisnawati v. U.S. Att'y Gen.*, 805 F. App'x 1015, 2020 WL 1487222, at *4 (11th Cir. 2020) (per curiam).

## B.     Filing Requirements

We also conclude that the BIA abused its discretion in denying Petitioners' motion to reopen based on their failure to submit a new asylum application with the motion. The BIA cited 8 C.F.R. § 1003.2(c)(1) in support of the supposed rule that petitioners must submit a new asylum application together with any motion to reopen. The BIA's reading of § 1003.2(c)(1) is contrary to the plain meaning of its text:

> A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material. A motion to reopen proceedings for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation.[23]

The text of § 1003.2(c)(1) requires that all "motions to reopen proceedings" include new facts, supported by affidavits or other evidentiary material. By contrast, it requires that "motions to reopen proceedings for the purpose of submitting an application for relief" include an application for relief and supporting documentation. We agree with Petitioners that the language "for the purpose of submitting an application for relief" must be given effect; a motion to

---

[23] 8 C.F.R. § 1003.2(c)(1).

reopen for the purpose of submitting an application for relief has to be a particular kind of motion to reopen, with particular procedural requirements.[24]

Petitioners did not file a motion to reopen "for the purpose of submitting an application for relief," or to submit a new claim for relief.[25] Petitioners had already submitted an application for relief based on their fear of persecution as Christians. They filed a motion to reopen to seek "review of [that] previously submitted application available to the BIA,"[26] in light of what they claimed were changed country conditions. Consistent with the text of § 1003.2(c)(1), and with our past practice of "overlooking" a petitioner's failure to submit a new asylum application when the petitioner has previously "pursue[d] an asylum claim before the agency,"[27] we find that Petitioners did not have to submit a new—duplicative— asylum application with their third motion to reopen. The BIA abused its discretion by denying Petitioners' motion based on their failure to submit a new asylum application.

---

[24] *See Williams v. Taylor*, 529 U.S. 362, 404 (2000) (describing the rule against surplusage as "a cardinal principle" for interpreting text); *see also Romero-Ruiz v. Mukasey*, 538 F.3d 1057, 1063 (9th Cir. 2008) (distinguishing between motions to reopen, in general, and motions to reopen for the purpose of submitting an application for relief).

[25] *See Jiang v. Holder*, 539 F. App'x 23, 23–24 (2d Cir. 2013) (denying a petitioner's motion to reopen based on his "failure to file an asylum application to support his *new* religion-based asylum claim" arising from his conversion to Christianity in the United States (emphasis added)).

[26] *Liang Wang v. Whitaker*, 743 F. App'x 867, 868 (9th Cir. 2018) (citing *Socop-Gonzales v. INS*, 272 F.3d 1176, 1196–97 (9th Cir. 2001) (*en banc*)) ("Where, as here, the petitioner does not seek a new form of relief but rather review of a previously submitted application available to the BIA, the original application need not be attached." (internal quotations omitted)).

[27] *Qin Jin Chen v. Mukasey*, 295 F. App'x 468, 469 n.3 (2d Cir. 2008).

**CONCLUSION**

For the reasons stated above, we GRANT the petition for review, VACATE the BIA's decision, and REMAND for explicit consideration of Petitioners' changed-conditions evidence.