21-6465
Alvarez-Monroy v. Garland

BIA
A099 208 793

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of February, two thousand twenty-four.

PRESENT:
> JOHN M. WALKER, JR.,
> GUIDO CALABRESI,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

_____

JAVIER ALVAREZ-MONROY,
> *Petitioner,*

v.                                                    **21-6465**
                                                      NAC

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

_____

**FOR PETITIONER:**     B. Alan Seidler, Esq., New York, NY.

**FOR RESPONDENT:**     Brian M. Boynton, Principal Deputy Assistant Attorney General; Anthony C. Payne, Assistant Director; Joseph D. Hardy, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Javier Alvarez-Monroy, a native and citizen of Colombia, seeks review of a July 29, 2021 decision of the BIA denying his motion to reopen his removal proceedings to reapply for deferral of removal under the Convention Against Torture ("CAT"). *In re Alvarez-Monroy*, No. A099 208 793 (B.I.A. July 29, 2021). We assume the parties' familiarity with the underlying facts and procedural history.

We review the BIA's denial of a motion to reopen for abuse of discretion and, "when a petitioner bases a motion to reopen on a purported change in [country] conditions," we review the BIA's country-conditions determination for substantial evidence. *See Shao v. Mukasey*, 546 F.3d 138, 168–69 (2d Cir. 2008). In

2

conducting this review, we are "mindful that motions to reopen 'are disfavored.'"

*Ali v. Gonzales*, 448 F.3d 515, 517 (2d Cir. 2006) (quoting *INS v. Doherty*, 502 U.S. 314, 322–23 (1992)). The BIA abuses its discretion when it "inexplicably departs from established policies," "provides no rational explanation," or produces a decision "devoid of any reasoning[] or contain[ing] only summary or conclusory statements." *Zheng v. Gonzales*, 500 F.3d 143, 146 (2d Cir. 2007) (citation and quotation marks omitted).

A noncitizen may file a motion to reopen no later than 90 days after the final administrative decision. 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). It is undisputed that Alvarez-Monroy's 2019 motion to reopen was untimely because he filed it more than three years after his 2015 order of removal. *See* 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). Moreover, the BIA concluded that Alvarez-Monroy had "not demonstrated that an exception to the 90-day time limit applies." *In re Alvarez-Monroy*, No. A099 208 793, at *1 (citing 8 U.S.C. § 1229a(c)(7)(C) and 8 C.F.R. § 1003.2(c)(2)).

Nevertheless, 8 U.S.C. § 1229a(c)(7)(C)(ii) provides, in relevant part, an exception to the 90-day time limit if the motion to reopen "is based on changed

country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." The existence of such a change is evaluated by "compar[ing] the evidence of country conditions submitted with the motion to those that existed at the time of the merits hearing below." *Tanusantoso v. Barr*, 962 F.3d 694, 698 (2d Cir. 2020) (citation and quotation marks omitted).

To prevail on a motion to reopen based on materially changed country conditions, "the movant must also establish *prima facie* eligibility" for the relief sought, "*i.e.*, 'a realistic chance' that he will be able to establish eligibility." *Poradisova v. Gonzales*, 420 F.3d 70, 78 (2d Cir. 2005) (quoting *Guo v. Ashcroft*, 386 F.3d 556, 563–64 (3d Cir. 2004)). The movant bears the "'heavy burden' of demonstrating that the proffered new evidence would likely alter the result in h[is] case." *Shao*, 546 F.3d at 168 (quoting *INS v. Abudu*, 485 U.S. 94, 110 (1988)).

To demonstrate eligibility for CAT relief, Alvarez-Monroy had the burden to show that he was more likely than not to suffer harm rising to the level of torture and that such harm would be "inflicted by, or at the instigation of, or with the

4

consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. §§ 1208.16(c), 1208.18(a)(1).

Alvarez-Monroy's initial claim was premised on the threat of physical harm posed by a drug trafficker, against whom he had provided information to U.S. prosecutors, and his associates. But the BIA found that Alvarez-Monroy failed to establish that he would be "subjected to torture in Colombia" or that the harm he fears "would occur at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity, including a circumstance where such official would be willfully blind to torture." *In re Alvarez-Monroy*, No. A099 208 793, at *1.

Thus, to prevail on his motion to reopen, Alvarez-Monroy had to present new evidence speaking to both issues to demonstrate his *prima facie* eligibility for relief. In support of reopening, however, he presented new evidence of recent threats and violence against members of his family in Colombia by "people" looking for him. Pet's Br. 11–12. He also asserted that "Col[o]mbian drug trafficking has an absolute connection to the Colombian Government" and that, "[b]ecause Alvarez is a criminal defendant, and informant against the activities

5

promoted by [the Revolutionary Armed Forces of Colombia ("FARC")] he will suffer harm" because "the Colombian government is unwilling to control FARC." Pet's Br. 7, 16–17.

Alvarez-Monroy, however, does not point to any record evidence to support his claim that Colombian drug traffickers, including members of FARC, have government ties. Moreover, Alvarez-Monroy does not point to any record evidence, beyond his own assertions, to suggest that there is a connection between FARC and the drug trafficker he fears.

And, as the Government argues, Alvarez-Monroy's new evidence does not show that any harm he would suffer would occur at the instigation of or with the consent or acquiescence of a public official. Rather, the evidence shows that the Colombian government has investigated recent crimes against his family members and taken steps to protect them. Alvarez-Monroy affirmed that, following an assassination attempt and threats against his uncle and aunt, they went to the "authorities," who "assign[ed his uncle] an officer for security from the Colombian National Police, [an] agency for which [his uncle] worked for more than 15 years." Certified Administrative Record ("CAR") at 91. Alvarez-Monroy's cousin stated

6

that he also went to the police after the kidnapping, and the police took his complaint, recommended that he leave town temporarily, and gave him instructions to follow up. The new evidence also indicates that the police have investigated the death of at least one of Alvarez-Monroy's brothers, and there is no evidence that a government official was complicit in that death. *See* CAR at 155. In addition, the BIA took administrative notice of a U.S. State Department report reflecting that there is a significant problem with violence by criminals in Colombia (including FARC members), but that the government is taking steps to prosecute those crimes. *See* U.S. State Dep't, 2019 Human Rights Rep. for Colombia, at 1–2 (available at https://www.state.gov/wp-content/uploads/2020/02/COLOMBIA-2019-HUMAN-RIGHTS-REPORT.pdf).

Given this evidence, the BIA did not abuse its discretion in finding that Alvarez-Monroy failed to make a *prima facie* showing that the Colombian government is likely to participate in or acquiesce to his torture, as necessary to warrant reopening. *See* 8 C.F.R. § 1208.18(a); *Poradisova*, 420 F.3d at 78; *see also Quintanilla-Mejia v. Garland*, 3 F.4th 569, 592 (2d Cir. 2021) (explaining that where

7

the "agency's conclusion finds support in record evidence, [a petitioner] cannot secure CAT relief by pointing to conflicting evidence that might support—but not compel—a different conclusion"). Moreover, Alvarez-Monroy has abandoned any challenge to the BIA's alternative finding that he has not shown that he could not safely relocate within Colombia. *See Zhang v. Gonzales*, 426 F.3d 540, 541 n.1 (2d Cir. 2005).

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

8